**Opinion issued October 7, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-13-00698-CR**

———————————

**EBER MARTINEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 12-DCR-060497**

**O P I N I O N**

After a bench trial, the trial court convicted appellant, Eber Martinez, of the first-degree felony offense of aggravated sexual assault, assessed punishment at confinement for seventeen years and 200 days, and ordered appellant to pay a

$2,000 fine.[1]  In three issues, appellant contends that (1) he did not knowingly and intelligently waive his right to a jury trial; (2) he should receive a new trial because the trial court violated Article 36 of the Vienna Convention concerning contacting consular authorities; and (3) his trial counsel rendered constitutionally ineffective assistance.

We affirm.

## Background

A grand jury indicted appellant for the offense of aggravated sexual assault of the complainant, J.B.M., appellant's estranged common-law wife.  At appellant's initial appearance before a magistrate judge, the magistrate judge informed appellant, a Honduran national, of his right to contact his consular authorities.  According to appellant, he did not speak with his consular authorities at that time because the Honduran consulate would not accept collect calls from the Fort Bend County Jail.

Before trial, appellant moved for the appointment of a Spanish-language interpreter, and the trial court granted this motion and appointed an interpreter. Appellant then sought to waive his right to a jury trial, and the State consented. The interpreter read the written waiver to appellant in open court, and the record

---

[1]     *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i) (Vernon Supp. 2014).

reflects that appellant signed the waiver before the trial court. Appellant and the

trial court then had the following exchange:

The Court:          Mr. Eber Martinez, you've heard that the State and the—and your attorney have announced that they are waiving their right to a jury trial on both the guilt/innocence and the punishment phase of this trial. Is that your desire?

[Appellant]:        Yes.

The Court:          So you do consent to trying it to the Court rather than to a jury?

[Appellant]:        Yes.

The Court:          All right. And you have signed such a waiver in which both your attorney and you have waived your right to a jury trial and choose to have this submitted to the Judge; is that correct?

[Appellant]:        Yes.

The Court:          And that's the document that has been handed to the Court by your attorney and signed by the State and you?

[Appellant]:        Yes.

The Court:          All right. The Court will accept same and will proceed with a bench trial.

The trial court then released the jury panel.

After accepting appellant's jury trial waiver and upon learning that appellant

was a citizen of Honduras, the trial court asked appellant whether he had had an

opportunity to speak with his consular authorities. Appellant responded, "Never."

The trial court then asked defense counsel to contact the Honduran consulate for

3

appellant and recessed the proceedings to allow this to occur. After appellant spoke with his consular authorities, he had the following discussion with the trial court:

| | |
|---|---|
| [Appellant]: | The female attorney [at the consulate] told me that the article—the Article [36 of the Vienna Convention] was violated. After having been for 14 months here, Fort Bend County never communicated me with the consulate. She said she doesn't have any report or any information concerning my being here. |
| The Court: | All right. Do you recall when you were first brought before a Court? |
| [Appellant]: | Yes, of course. |
| The Court: | Did you sign a number of papers regarding the charges against you and were advised by the Judge of your rights at that time? |
| [Appellant]: | Yes, of course. It was Judge Pedro Ruiz. Pedro Ruiz asked me if I wanted the consulate to contact—to contact me. And never, never. |
| The Court: | So you were advised of your right to contact the consulate? |
| [Appellant]: | Exactly, but it was never. |
| The Court: | Did you contact the consulate after being advised of that? |
| [Appellant]: | Never because they don't take any collect calls from the jail. |
| The Court: | All right. Then we have complied with the consulate treaty rights by advising you of your right to contact consulate, and it's your duty to contact your consulate. The fact that the consulate doesn't collect—take collect calls is a problem the |

4

> consulate has, not your—not a problem this Court
> has.

The trial court then discussed the potential adverse immigration consequences that could occur due to a conviction, and appellant indicated that he had discussed that with his counsel and that he understood the potential consequences.

At trial, J.B.M. testified that she had a disagreement with appellant concerning their daughter on the afternoon of April 27, 2012. The disagreement ended with J.B.M. telling appellant to leave her alone and that she did not wish to see him. J.B.M. went out that evening to celebrate a friend's birthday, and appellant repeatedly called her while she was out, but she refused to answer. She returned home around 2:00 a.m., and after she got out of her car in her driveway, appellant grabbed her around her neck. Appellant ripped J.B.M.'s clothes off and dragged her through several yards, occasionally pulling her by her hair. Throughout the encounter, appellant tried to choke J.B.M., he hit her head against the ground, and he scratched her on her face and neck. At one point while appellant had his hands around J.B.M.'s throat, he told her, "This is as far as we go. This is as far as you go." J.B.M., who was in fear for her life, told appellant to think of their daughters. Appellant stopped strangling her, but he then sexually assaulted J.B.M. She testified that she did not want to have sex with appellant and that she was afraid he would get angry with her again if she did not participate.

5

J.B.M. identified appellant in court as her attacker. The State introduced pictures and testimony concerning J.B.M.'s injuries. The trial court also admitted DNA test results indicating that appellant was a source of DNA for the vaginal swabs taken from J.B.M.

Defense counsel did not call any witnesses, nor did he introduce any evidence concerning appellant's good character. During closing argument at the guilt/innocence phase, defense counsel conceded, "There's a sexual assault occurring under these facts," but he argued that the evidence reflected that, at the time the sexual assault happened, J.B.M. was no longer in fear for her life, and, as a result, appellant was potentially guilty of the lesser-included offense of sexual assault, not the charged offense of aggravated sexual assault. The trial court found appellant guilty of aggravated sexual assault as charged in the indictment.

J.B.M. testified during the punishment phase as well. She testified concerning an incident that occurred in 2011, in which she woke up to see appellant standing over her and her daughters, who were asleep, while holding an axe and making a chopping motion. J.B.M. called 9-1-1, but when the police arrived, appellant spoke with the officers and told them that they had called the police because they heard thieves outside the house. She also testified concerning an incident that occurred in March 2012, in which appellant brought a gun to work, and another co-worker told J.B.M. that appellant had purchased the gun "just in

case [appellant] ever saw [J.B.M.] with someone else." Defense counsel did not object to this testimony on any grounds. Defense counsel cross-examined J.B.M. about both extraneous incidents.

Defense counsel did not call any witnesses in the punishment phase or attempt to put on any mitigating evidence. During closing argument, the State referenced the extraneous acts on three occasions.

In pronouncing appellant's sentence, the trial court stated:

> The actions that occurred on the night of this event are not simply a fight between a husband and a wife. It was a brutal assault that escalated across a yard in public. It involved brutalization of another person, who led to that person fearing for her life because of defendant's actions. That alone is sufficient for a number of years in the penitentiary.

The trial court did not mention the extraneous bad acts. The court then assessed punishment at confinement for seventeen years and 200 days and a $2,000 fine. Appellant did not file a motion for new trial.

## Waiver of Right to Jury Trial

In his first issue, appellant contends that he did not knowingly and intelligently waive his right to a jury trial. Appellant contends that the trial court failed to inform him that a jury could have considered lesser-included offenses and that a jury could, if appellant met certain requirements, recommend that the court place appellant on community supervision for aggravated sexual assault, a right not present in a bench trial.

7

A defendant has an absolute right to a jury trial. *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009); *see also* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State . . . ."); TEX. CONST. art. I, § 15 ("The right of trial by jury shall remain inviolate."). A defendant may, however, waive this right and instead have a bench trial. *See Hobbs*, 298 S.W.3d at 197. Code of Criminal Procedure article 1.13(a) provides:

> The defendant in a criminal prosecution for any offense . . . shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that . . . the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state. The consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the state shall be in writing, signed by that attorney, and filed in the papers of the cause before the defendant enters the defendant's plea.

TEX. CODE CRIM. PROC. ANN. art. 1.13(a) (Vernon Supp. 2014). When a defendant challenges a jury-trial waiver on appeal, the State must establish through the trial record an express, knowing, and intelligent waiver of that right. *Hobbs*, 298 S.W.3d at 197 (citing *Guillett v. State*, 677 S.W.2d 46, 49 (Tex. Crim. App. 1984)); *Smith v. State*, 363 S.W.3d 761, 767 (Tex. App.—Austin 2012, pet. ref'd).

Here, before the trial court summoned the jury panel for voir dire, the State announced that appellant was about to finalize a jury-trial waiver and that the State consented to proceeding in a bench trial. The court-appointed interpreter read the

8

waiver to appellant, who then signed the document in open court. The trial court, defense counsel, and appellant then had the following exchange:

| The Court: | What says the defense? |
|---|---|
| [Defense counsel]: | We're in agreement. And by my signature, my client, Eber Martinez's, signature, we waive our right to have a jury trial and wishes—the client wishes to proceed with a trial before the Judge. |
| The Court: | That includes both the guilt/innocence and punishment? |
| [Defense counsel]: | That's correct. |
| The Court: | Mr. Eber Martinez, you've heard that the State and the—and your attorney have announced that they are waiving their right to a jury trial on both the guilt/innocence and the punishment phase of this trial. Is that your desire? |
| [Appellant]: | Yes. |
| The Court: | So you do consent to trying it to the Court rather than to a jury? |
| [Appellant]: | Yes. |
| The Court: | All right. And you have signed such a waiver in which both your attorney and you have waived your right to a jury trial and choose to have this submitted to the Judge; is that correct? |
| [Appellant]: | Yes. |
| The Court: | And that's the document that has been handed to the Court by your attorney and signed by the State and you? |
| [Appellant]: | Yes. |
| The Court: | All right. The Court will accept same and will proceed with a bench trial. |

The court then released the jury panel. Appellant's written jury-trial waiver, signed by himself, defense counsel, the State, and the court-appointed interpreter is included in the clerk's record for this case.

There is no indication in the record that appellant did not knowingly and voluntarily waive his right to a jury trial. *See Hoang v. State*, 825 S.W.2d 729, 732 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (holding that Vietnamese-speaking defendant, who required translation of jury-trial waiver, knowingly and voluntarily waived right to jury trial when trial court asked defendant if he was aware that he had constitutional right to jury trial, whether he understoodwhat jury trial is, and whether he wanted to waive right and have matter heard by court). Indeed, the trial court itself questioned appellant and determined that appellant wished to proceed with a bench trial instead of a jury trial. The record supports the trial court's implicit determination that appellant knowingly and voluntarily waived his right to a jury trial. *See Smith*, 363 S.W.3d at 768; *Hoang*, 825 S.W.2d at 732.

Appellant contends, however, that he did not knowingly and voluntarily waive his right to a jury trial because no one informed him that (1) juries may consider lesser-included offenses and (2) the trial court could impose community supervision for aggravated sexual assault only upon recommendation of the jury,

but it cannot consider this punishment option in a bench trial.  Appellant's contentions are not meritorious.

Appellant first contends that, in signing the jury-trial waiver, he unknowingly relinquished his right to have a jury consider the lesser-included offense of sexual assault.  This right, however, is not limited to jury trials.  "In a bench trial, the prosecution is not required to submit a lesser included offense charge to the trial judge.  The trial court is authorized to find the appellant guilty of any lesser offense for which the State provides the required proof." *Shute v. State*, 877 S.W.2d 314, 314 (Tex. Crim. App. 1994); *see also Davis v. State*, 89 S.W.3d 725, 731 (Tex. App.—Corpus Christi 2002, no pet.) (stating same); *Leach v. State*, 35 S.W.3d 232, 237 (Tex. App.—Austin 2000, no pet.) (stating same).  Thus, if the evidence presented justified the submission of a lesser-included offense charge on sexual assault to a jury, the trial court could have considered that lesser charge in a bench trial.  Appellant therefore did not relinquish his right to the consideration of a lesser-included offense warranted by the evidence presented when he waived his right to a jury trial.

Appellant also contends that he unknowingly relinquished his right to have a jury recommend community supervision for aggravated sexual assault, an option

11

not open to the trial court in a bench trial.[2] Appellant is correct that the Code of Criminal Procedure generally prohibits the trial court from imposing community supervision as a punishment for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(E) (Vernon Supp. 2014) (stating that provisions of Code allowing trial court to impose community supervision do not apply to defendant adjudged guilty of aggravated sexual assault). A jury, however, may recommend community supervision for an aggravated sexual assault offense if certain other conditions are met, and, if it does so recommend, the trial court is required to place the defendant on community supervision. *See id.* art. 42.12, § 4(b).

Appellant does not, however, cite any authority holding that the trial court should have ensured that appellant had been informed of these principles before he signed the jury-trial waiver. *See Huynh v. State*, 833 S.W.2d 636, 640 (Tex. App.—Houston [14th Dist.] 1992, no pet.) ("We find no cases to support the position that a trial judge has a duty to inquire of the defendant or his attorney what specific legal advice concerning waiver of jury trial was given."). Here, as in *Huynh*, the trial court discussed the jury-trial waiver on the record with both appellant and defense counsel, and the court appeared satisfied that appellant had received legal advice on the matter and that appellant knowingly and intelligently

---

[2] Appellant does not argue that he received erroneous advice concerning community supervision before he waived his right to a jury trial.

waived his right to a jury trial. *See id.* Appellant has presented no evidence, other than his argument in his appellate brief, demonstrating that no one informed him that the trial court could not impose community supervision as a punishment for aggravated sexual assault in a bench trial. We conclude that appellant has not demonstrated that he did not knowingly and voluntarily waive his right to a jury trial on this basis.

We hold that the record supports a conclusion that appellant knowingly and voluntarily waived his right to a jury trial.

We overrule appellant's first issue.

## Vienna Convention

In his second issue, appellant contends that he is entitled to a new trial because the trial court violated Article 36 of the Vienna Convention by not providing him with a phone call to his consular authorities until the day of his trial.

Article 36 of the Vienna Convention "addresses communication between an individual and his consular officers when the individual is detained by authorities in a foreign country." *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 337, 126 S. Ct. 2669, 2674 (2006). Article 36, entitled "Communication and contact with nationals of the sending State," provides:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

(a) consular officials shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

(b) *if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner.* Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

(c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

Vienna Convention on Consular Relations, art. 36, Apr. 24, 1963, 21 U.S.T. 77, 595 U.N.T.S. 261 (emphasis added).

"In other words, when a national of one country is detained by authorities in another, the authorities must notify the consular officers of the detainee's home country if the detainee so requests." *Sanchez-Llamas*, 548 U.S. at 338–39, 126 S. Ct. at 2675; *see also Medellin v. Texas*, 552 U.S. 491, 499, 128 S. Ct. 1346, 1353 (2008) ("[Article 36] provides that if a person detained by a foreign country 'so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State' of such detention, and 'inform the [detainee] of his righ[t]' to request assistance from the consul of his own state."); *Sierra v. State*, 218 S.W.3d 85, 87 (Tex. Crim. App. 2007) ("[Article 36] 'grants a foreign national who has been arrested, imprisoned or taken into custody a right to contact his consulate and requires the arresting government authorities to inform the individual of the right 'without delay.'").

Article 36 does not guarantee any consular assistance; rather, it "secures only a right of foreign nationals to have their consulate *informed* of their arrest or detention—not to have their consulate intervene . . . ." *Sanchez-Llamas*, 548 U.S. at 349, 126 S. Ct. at 2681 (emphasis in original). The Court in *Sanchez-Llamas* also noted that, if a defendant raises an Article 36 violation at trial, "a court can make appropriate accommodations to ensure that the defendant secures, to the

15

extent possible, the benefits of consular assistance." *Id.* at 350, 126 S. Ct. at 2682; *see also Sierra*, 218 S.W.3d at 88 (noting that Supreme Court has held that if defendant raises Vienna Convention violation at trial, trial court can make accommodations to ensure benefits of consular assistance).

Here, after the trial court accepted appellant's jury-trial waiver, the court inquired about appellant's citizenship and then had the following exchange with appellant and defense counsel:

| The Court: | Have you had the opportunity to visit with the Honduran consulate or representatives regarding your rights under the various treaties? |
| --- | --- |
| [Appellant]: | Never. |
| The Court: | Have you discussed that with your attorney? |
| [Appellant]: | No. |
| The Court: | Do you wish to do so? |
| [Appellant]: | Yes, of course. |
| The Court: | All right.  If you'll, [defense counsel], take him over and let him contact—I believe the Honduran authorities have a representative here in the Houston area.  If you can get him that phone number and have him contact them and explain to him what treaty rights I'm talking about— |
| [Defense counsel]: | Right.  I—the reason why we never contacted them was because he understood—we talked about deportation, the fact that he had an ICE hold.[3]  We |

---

[3]  An "ICE hold" or "ICE detainer" is a notice that the Department of Homeland Security issues to federal, state, and local law enforcement agencies to inform the agency that Immigration and Customs Enforcement ("ICE") "intends to assume custody of an individual" in the law enforcement agency's custody.  *See ICE*

talked about everything, and he had never indicated that he wanted to speak to them, but I will.

The trial court then took at least a thirty-minute recess while appellant spoke with officials at the Honduran consulate.

When the trial reconvened, appellant confirmed that he had spoken with an attorney at the Honduran consulate. He stated that the consular attorney told him that Article 36 had been violated, and he had the following discussion with the trial court:

| [Appellant]: | After having been for 14 months here, Fort Bend County never communicated me with the consulate. [The attorney] said she doesn't have any report or any information concerning my being here. |
|---|---|
| The Court: | All right. Do you recall when you were first brought before a Court? |
| [Appellant]: | Yes, of course. |
| The Court: | Did you sign a number of papers regarding the charges against you and were advised by the Judge of your rights at that time? |
| [Appellant]: | Yes, of course. It was Judge Pedro Ruiz. Pedro Ruiz asked me if I wanted the consulate to contact—to contact me. And never, never. |
| The Court: | So you were advised of your right to contact the consulate? |
| [Appellant]: | Exactly, but it was never. |

*Detainers: Frequently Asked Questions*, U.S. DEP'T OF HOMELAND SEC., https://www.ice.gov/news/library/factsheets/detainer-faqs.htm (last visited on Oct. 2, 2014).

| The Court: | Did you contact the consulate after being advised of that? |
| [Appellant]: | Never because they don't take any collect calls from the jail. |
| The Court: | All right. Then we have complied with the consulate treaty rights by advising you of your right to contact consulate, and it's your duty to contact your consulate. The fact that the consulate doesn't collect—take collect calls is a problem the consulate has, not your—not a problem this Court has. |

Appellant acknowledges on appeal that, at his initial hearing before a magistrate, the magistrate judge informed him of his right to contact his consular authorities. Defense counsel indicated at trial that he and appellant never contacted the Honduran consulate, however, due to appellant's "ICE hold" and that appellant never indicated that he wished to speak to his consular authorities. Furthermore, after appellant brought the alleged violation to the attention of the trial court, the court recessed the trial and allowed appellant to speak with his consular authorities, which appellant did. On appeal, appellant has offered no indication of what benefits, if any, his consular authorities would have provided to him had the authorities been notified at the time of his arrest as opposed to the day of his trial. We therefore conclude that the trial court in this case, by taking a recess and allowing appellant to contact his consular authorities, made "appropriate accommodations" to ensure that appellant secured, "to the extent possible, the

18

benefits of consular assistance." *See Sanchez-Llamas*, 548 U.S. at 350, 126 S. Ct. at 2682; *Sierra*, 218 S.W.3d at 88.

We hold that because the magistrate informed appellant of his Vienna Convention rights shortly after arrest and the trial court recessed the trial proceedings to allow appellant the opportunity to speak with his consular authorities, the court did not violate appellant's Vienna Convention rights, and a new trial is not warranted on this basis.

We overrule appellant's second issue.

**Ineffective Assistance of Counsel**

In his final issue, appellant contends that his trial counsel rendered constitutionally ineffective assistance. Specifically, appellant contends that his trial counsel: (1) failed to warn him of immigration consequences; (2) advised him to waive his right to a jury trial, which caused him to forfeit the submission of a lesser-included offense; (3) failed to request notice from the State of extraneous offense evidence; (4) failed to present good character evidence during the guilt/innocence phase to "show that it is improbable that he committed the charged offense"; and (5) failed to present mitigating evidence during the punishment phase.

## A. Standard of Review

To establish that trial counsel rendered ineffective assistance, an appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010); *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008). The appellant's failure to make either of the required showings of deficient performance and sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The appellant must first show that his counsel's performance fell below an objective standard of reasonableness. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a

probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065; *Williams*, 301 S.W.3d at 687. Our review is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833, 835 (Tex. Crim. App. 2002). To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *see Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness).

In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallett*, 65 S.W.3d at 63; *see also Massaro v. United States*, 538 U.S. 500, 505, 123 S. Ct. 1690, 1694 (2003) ("If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's

alternatives were even worse. The trial record may contain no evidence of alleged errors of omission, much less the reason underlying them.") (internal citations omitted). Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and concludes that counsel was ineffective. *See Rylander*, 101 S.W.3d at 111; *Bone*, 77 S.W.3d at 836.

### B. *Failure to Warn of Immigration Consequences*

Appellant first argues that his trial court rendered ineffective assistance because his counsel did not adequately warn him of the adverse immigration consequences following a conviction. Appellant cites the United States Supreme Court's decision in *Padilla v. Kentucky* for the proposition that his trial counsel had a duty to warn him of the adverse immigration consequences that he faced. The State argues that *Padilla* is inapplicable, as appellant did not plead guilty to the charged offense, but instead was found guilty after a full bench trial on the merits. We agree with the State.

In *Padilla v. Kentucky*, an ineffective assistance of counsel case, the United States Supreme Court addressed the question of whether defense counsel had an obligation to inform his client of the adverse immigration consequences that may occur following the client's guilty plea. *See* 559 U.S. 356, 360, 130 S. Ct. 1473,

22

1478 (2010). The Court answered the question in the affirmative, concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel," and held that "counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 366, 374, 130 S. Ct. at 1482, 1486. The Court noted that "informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process." *Id.* at 373, 130 S. Ct. at 1486. The Court held that Padilla's counsel, who explicitly told Padilla that he would not have to worry about immigration consequences prior to his entering a guilty plea, rendered constitutionally ineffective assistance, and the Court remanded the case for Padilla to demonstrate prejudice under *Strickland*; that is, whether a reasonable probability existed that, but for counsel's deficient advice, the result of the proceeding would have been different. *Id.* at 374, 130 S. Ct. at 1487.

In the context of a guilty plea, to establish prejudice, and, therefore, ineffective assistance, under *Strickland*, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); *see also Ex parte Moussazadeh*, 361 S.W.3d 684, 690–91 (Tex. Crim. App. 2012) ("On a claim of involuntary plea, the standard for the analysis of harm under the *Strickland* protocol as expressed in these cases may

23

be stated generally as 'but for the erroneous advice of counsel, the applicant would not have plead[ed] guilty.'") (quoting *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010)).

In this case, appellant argues that he received ineffective assistance of counsel pursuant to *Padilla* because his trial counsel failed to warn him of the adverse immigration consequences that he faced upon conviction. The record, however, does not reflect that appellant was unaware of the potential immigration consequences that he faced should he be convicted. The trial court, defense counsel, and appellant all discussed on the record appellant's "ICE hold" that was in place, and appellant indicated his understanding that he had the immigration hold regardless of the outcome of the current trial and that the immigration court, and not the trial court, would make the ultimate decision regarding deportation. Furthermore, unlike in *Padilla*, appellant did not plead guilty to the charged offense of aggravated sexual assault. Instead, he had a full trial on the merits of the offense. This is, therefore, not a situation in which appellant can argue that, had he received appropriate advice concerning adverse immigration consequences, he would not have pleaded guilty but would have instead gone to trial. Here, appellant *did* go to trial. Thus, he cannot contend that, had he received sufficient information regarding the adverse immigration consequences, a reasonable probability exists that the result of the proceeding would have been different. *See*

*Padilla*, 559 U.S. at 374, 130 S. Ct. at 1487; *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Appellant attempts to analogize *Padilla* and this case, which he contends involves "the failure to warn of such immigration consequences of a jury waiver," but he provides no authority showing that this case, in which he waived his right to a jury trial but still had a full trial on the merits of his offense before the trial court, should be treated the same as *Padilla*, in which the defendant judicially confessed to the charged offense via guilty plea. Appellant has provided no authority that the waiver of the jury trial itself has any immigration consequences separate and apart from the consequences that occur as a result of any conviction, such as deportation if the defendant is convicted of certain offenses. Appellant waived his right to a *jury*; he did not, as the defendant did in *Padilla*, waive his right to a *trial*. We therefore conclude that appellant has not demonstrated, by a preponderance of the evidence, that his trial counsel rendered ineffective assistance by failing to warn him of adverse immigration consequences.

### C. Advising Appellant to Waive the Right to a Jury Trial

Appellant next argues that his trial counsel rendered ineffective assistance when he advised appellant to waive his right to a jury trial because the evidence at

trial supported the submission of the lesser-included offense of aggravated assault, which a jury could have considered.[4]

Sexual assault is a lesser-included offense of aggravated sexual assault. *Curtis v. State*, 89 S.W.3d 163, 178 (Tex. App.—Fort Worth 2002, pet. ref'd). As we have already held, the right to the submission of a lesser-included offense when properly raised by the evidence is not limited to a jury trial.

In a bench trial, the prosecutor is not required to submit a lesser-included offense charge to the trial court, but the court may find the defendant guilty of any lesser-included offense for which the State provides the required proof. *See Shute*, 877 S.W.2d at 314; *Davis*, 89 S.W.3d at 731; *Leach*, 35 S.W.3d at 237. Thus, even in this bench trial, if the evidence presented had justified the submission of a charge on the lesser-included offense of sexual assault, the trial court could have considered that evidence and found appellant guilty of the lesser-included offense instead of the charged offense. Appellant's trial counsel understood that the trial court could consider finding appellant guilty of the lesser-included offense of

---

[4] Specifically, appellant contends that the submission of the lesser-included offense of sexual assault was appropriate because J.B.M.'s testimony indicated that, at the time the sexual assault occurred, she was not in fear for her life and had no subjective fear of imminent death or serious bodily injury. He also contends that a lesser-included offense was appropriate because the evidence reflected that J.B.M., while injured during the assault, did not suffer serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon Supp. 2014) (defining "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").

26

sexual assault and argued during closing argument of the guilt/innocence phase of the trial that, although "[t]here's a sexual assault occurring under these facts," the assault did not rise to the level of an aggravated sexual assault, and counsel argued instead that the court should find appellant guilty of second-degree sexual assault.

Because a trial court in a bench trial may consider lesser-included offenses when warranted by the evidence presented at trial, just as a jury may, trial counsel's advice that appellant waive his right to jury trial when the trial evidence potentially raised a lesser-included offense—a matter we need not decide—does not constitute ineffective assistance of counsel.

### D. Failure to Request Notice of Extraneous Offense Evidence

Appellant further contends that he received ineffective assistance of counsel because his trial counsel failed to request that the State provide notice of extraneous offenses and bad acts pursuant to Code of Criminal Procedure article 37.07. Specifically, appellant contends that, due to his counsel's failure, he had no notice that the State intended to present evidence during the punishment phase of his trial that (1) appellant stood over J.B.M. and their daughters while they were asleep while holding an axe and making chopping motions; (2) that when the police arrived after J.B.M. called 9-1-1 in response to this behavior, appellant lied and said they had called 9-1-1 because they heard thieves outside their home; and (3) appellant allegedly possessed a gun while at work and a co-worker informed

27

J.B.M. that appellant purchased the gun "just in case [appellant] ever saw [J.B.M.] with someone else."

> Code of Criminal Procedure article 37.07, section 3(a)(1) provides:
>
> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp. 2014). On timely request by the defendant, the State shall give notice of its intent to introduce evidence under this section "in the same manner required by Rule 404(b), Texas Rules of Evidence." *Id.* art. 37.07, § 3(g); *see* TEX. R. EVID. 404(b) (providing that evidence of defendant's other crimes or bad acts may be admissible for purposes other than character conformity "provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction"). The State is only required to give such notice if the defendant makes a timely request for the notice. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g).

In general, trial counsel's failure to file pre-trial motions, such as a request for notice of intent to introduce extraneous offense evidence, does not result in ineffective assistance of counsel. *See Autry v. State*, 27 S.W.3d 177, 182 (Tex. App.—San Antonio 2000, pet. ref'd) (noting that trial counsel may have received oral notice from State and that appellant "has not stated what steps he would have taken if he had received written notice of the State's intent to introduce extraneous evidence").

Even if, however, appellant could establish that his trial counsel's failure to request notice of extraneous bad acts pursuant to article 37.07, section 3(g) constituted deficient performance, a matter we do not decide, appellant has not demonstrated, by a preponderance of the evidence, that, had he received timely notice, the trial court's assessment of punishment would have been less severe in the absence of counsel's deficient performance. *See Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("[W]e must determine whether there is a reasonable probability that the jury's assessment of punishment in this case would have been less severe in the absence of counsel's deficient performance."); *see also Shanklin v. State*, 190 S.W.3d 154, 165 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) (considering, in determining whether trial counsel rendered ineffective assistance at punishment phase, whether

reasonable probability exists that sentence would have been less severe but for deficient performance).

Defense counsel cross-examined J.B.M. about both instances of extraneous bad acts, and counsel gave no indication that the lack of notice regarding the extraneous bad acts hampered his ability to cross-examine J.B.M. about them. Furthermore, although the State referenced the extraneous bad acts on three occasions during its closing argument in the punishment phase, the trial court stated the following before pronouncing appellant's sentence:

> The actions that occurred on the night of this event are not simply a fight between a husband and a wife. It was a brutal assault that escalated across a yard in public. It involved brutalization of another person, who led to that person fearing for her life because of defendant's actions. That alone is sufficient for a number of years in the penitentiary.

The trial court then assessed punishment at seventeen years and 200 days' confinement and imposed a $2,000 fine, a punishment that is at the lower end of the punishment range for a first-degree felony. *See* TEX. PENAL CODE ANN. § 12.32 (Vernon 2011) (providing that punishment range for first-degree felony is imprisonment for five to ninety-nine years or confinement for life and that fact finder may impose fine of up to $10,000).

In assessing appellant's punishment, the record reflects that the trial court focused on the facts of the charged offense instead of the evidence of extraneous bad acts that the State introduced during the punishment phase. The evidence from

30

the guilt/innocence phase established that appellant attacked J.B.M., his estranged common-law wife, in the yard in front of her house, repeatedly choking and hitting her while dragging her down the street before sexually assaulting her. The trial court explicitly mentioned the circumstances of this offense before assessing punishment. We conclude that appellant has not established that, had his trial counsel requested that the State provide notice of its intent to offer extraneous bad acts evidence, a reasonable probability exists that the trial court would have assessed a less severe sentence. *See Autry*, 27 S.W.3d at 182 ("[Appellant] has not demonstrated that a different outcome would have been possible if trial counsel had been in possession of written disclosure from the State of its plan to introduce extraneous offenses during punishment phase."); *see also Hinson v. State*, 166 S.W.3d 331, 332–33 (Tex. App.—Waco 2005, pet. ref'd) (concluding that appellant did not demonstrate prejudice from trial counsel's failure to request notice of extraneous offenses).

### E. Failure to Present Good Character and Mitigating Evidence

Finally, in related issues, appellant contends that his trial counsel rendered ineffective assistance because, at the guilt/innocence stage, he failed to present evidence of a "specific good-character trait to show that it is improbable that [appellant] committed the charged offense [which] would have been relevant," and, at the punishment phase, counsel failed to present mitigating evidence

31

concerning "the defendant's life and characteristics." We analyze these complaints together.[5]

Appellant cites this Court's opinion in *Melgar v. State* for the proposition that the accused in a criminal case "is permitted to introduce evidence of a specific good-character trait to show that it is improbable that he committed the charged offense, when that character trait is relevant to the offense." 236 S.W.3d 302, 306–07 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). At the punishment phase, evidence relevant to the assessment of punishment includes "information about the defendant's life and characteristics." *Minor v. State*, 91 S.W.3d 824, 830 (Tex. App.—Fort Worth 2002, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07(a)(1) (providing that evidence relevant to sentencing includes evidence relating to defendant's "general reputation, his character, [and] an opinion regarding his character").

Here, although appellant argues that his trial counsel should have presented good-character evidence at the guilt/innocence phase of trial and mitigating evidence at the punishment phase of trial, he has presented no specific indication of the evidence that he claims should have been introduced by his trial counsel, nor is there any indication that such evidence actually exists. *See Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) ("[S]ince appellant does not explain what

---

[5] We note that appellant does not contend that his trial counsel failed to conduct an adequate investigation into potential good-character and mitigating evidence.

mitigating evidence his trial counsel should have proffered, we cannot possibly find that a failure to proffer such evidence constituted ineffective assistance."); *cf. Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007) (per curiam) ("When challenging an attorney's failure to call a particular witness, an 'applicant must show that [the witness] had been available to testify and that his testimony would have been of some benefit to the defense.'") (quoting *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004)); *Barnett v. State*, 344 S.W.3d 6, 14 (Tex. App.—Texarkana 2011, pet. ref'd) ("A claim of ineffective assistance based on trial counsel's failure to call a witness cannot succeed absent a showing that the witness was available to testify and that the witness' testimony would have benefitted the defense."). Appellant has pointed to no specific good-character or mitigating evidence that, if it had been developed at trial, probably would have led to a not guilty verdict or a lesser punishment. *See Bone*, 77 S.W.3d at 837 ("The court of appeals obviously felt that counsel should have introduced more mitigating evidence, but there is no reason to believe that such evidence existed.").

To prevail on his ineffective assistance claim, appellant needed to present an appellate record that affirmatively demonstrates that his counsel's actions were not based on sound trial strategy. *See Mallett*, 65 S.W.3d at 62–63; *Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness). By failing to provide any indication of whether good-character or

33

mitigating evidence was available to appellant and what constituted that evidence, appellant has not established that his trial counsel rendered ineffective assistance for failing to introduce such evidence at trial. *See Narvaiz*, 840 S.W.2d at 434; *Rodriguez v. State*, 292 S.W.3d 187, 190 (Tex. App.—Amarillo 2009, no pet.) ("Without record evidence of what, if any, mitigating evidence was available to appellant and counsel's reasons for not offering such evidence as existed, appellant is unable to overcome the presumption that counsel's conduct falls within the wide range of reasonable professional assistance."); *Beard v. State*, 243 S.W.3d 783, 785 (Tex. App.—Amarillo 2007, pet. ref'd) (noting, in overruling appellant's ineffective assistance claim, that appellant did not "cite us to any evidence illustrating that favorable mitigating evidence actually existed").

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Publish. Tex. R. App. P. 47.2(b).

34