**Opinion issued August 28, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-24-00090-CR

————————————

### MICHAEL WAYNE STEWART, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1833930**

---

## MEMORANDUM OPINION

A jury convicted appellant Michael Wayne Stewart of harassment of a public servant. TEX. PENAL CODE § 22.11(a)(1). The trial court assessed appellant's punishment at 25 years in the Institutional Division of the Texas Department of

Criminal Justice. Appellant complains in three points of error that he received ineffective assistance of counsel.

## Background

Complainant Robert Rodgers is employed by the Harris County Sheriff's Office and assigned to work as a detention officer in the Harris County Jail. Officer Rodgers testified that, during his routine rounds of cell checks on August 31, 2023, he observed appellant, an inmate, who appeared to be upset. When Officer Rodgers asked appellant if he was okay, appellant responded belligerently. While Officer Rodgers moved on to check the next cell, he felt a liquid strike him from his left side, landing on his uniform emblem and running down his pant leg to his boot. Moments later, Officer Rodgers detected the smell of feces and urine. Officer Rodgers testified that he continued to wear the uniform for the remainder of his shift.

Detention Officer Calyn Cutler observed the incident and testified at trial. Officer Cutler saw the liquid come out of a gap in appellant's cell door and land on Officer Rodgers. Officer Cutler described the liquid as smelling like a mixture of urine and feces.

Deputy Rachel Rossel-Ortiz also testified that, when Rodgers arrived at her office that day, she noticed the smell of what she recognized as urine and feces.

Appellant admits to throwing a liquid at Officer Rodgers but insists that it was not urine or feces, but a mixture of "peanut butter, water, Jack Mac juice, [and] pickle juice" from the commissary.

The State presented Detention Officer Sabastian Chapa to testify about an extraneous offense involving appellant that occurred on January 8, 2024, approximately two weeks before the trial. The State filed its notice of intent to use evidence of prior convictions and extraneous offenses on January 19, 2024, two days after appellant rejected a plea bargain offer and was arraigned, and one day after jury selection. The State uploaded the police report of the extraneous incident to the Harris County District Attorney's Office discovery portal on January 18, 2024, the day jury selection took place. During counsel's argument to the trial court regarding the admissibility of the extraneous offense, appellant's counsel indicated that he was unaware appellant had any extraneous offenses but admitted that he did not request notice from the State of any extraneous offense evidence and expressed to the court he did not know that a request needed to be made. Appellant's counsel further argued that he did not have the opportunity to investigate the extraneous offense. Appellant's counsel argued, "[t]he other thing is timeliness. Because I don't believe that the defense was made aware of this until Friday of last week." The trial court overruled the objection. After further discussion, the trial court found the extraneous offense evidence admissible.

Appellant's counsel objected again on the grounds that the admission of such evidence would be more prejudicial than probative, and the court overruled the objection.

Detention Officer Chapa testified that he observed appellant throwing urine and feces at another inmate through the pan hole of appellant's cell door on January 8, 2024. During direct examination, the State asked Officer Chapa whether he had prior interactions with or "knew of" appellant before January 8, 2024. Officer Chapa responded that he did and elaborated, stating, "he [had] been known to—" but the trial court interrupted before Officer Chapa could finish his statement. Counsel approached the bench, and the trial court advised the State to admonish Officer Chapa to exclude any discussion about appellant's reputation. Appellant's counsel did not make any objections during the State's direct examination of Officer Chapa.

Prior to trial, appellant filed a "Motion to Dismiss Court Appointed Attorney and Appoint New Counsel to Act on His Behalf", claiming that:

A. Counsel has had no contact with the defendant in the past months,

B. Counsel has taken no affirmative action to preserve and to protect valuable rights of the defendant, [and]

C. Defendant by way of and because of these actions has no faith and confidence in aforesaid.

Appellant argued the motion on his own behalf before trial, explaining that his attorney had only visited him twice in 13 months. The trial court denied appellant's request.

Appellant testified during the punishment phase of his trial and complained that there were three officers who would testify on his behalf to corroborate that the substance he threw at Officer Rodgers was not feces or urine, but his counsel refused to call them. Appellant expressed that he felt that he did not receive "fair, accurate, appropriate representation." Appellant was sentenced to 25 years in prison, the minimum sentence appellant could receive given that the trial court found two enhancement paragraphs true.[1]

After the punishment phase concluded, the trial court, the State, and appellant's counsel discussed the details of appellant's testimony. It was revealed that, a week before trial, appellant had asked his counsel to call a detention officer who is Officer Rodgers's supervisor and who wrote the incident report regarding the extraneous act Officer Chapa testified about. The State mentioned that it did not call this witness because the witness would have only testified to seeing Officer Rodgers wet and could not testify about the smell. Appellant's counsel asserted to the trial court that appellant never asked him to call that officer. Appellant's counsel said he decided not to call the officer to testify but did not explain his

---

[1] Appellant's punishment range was enhanced pursuant to section 12.42(d) of the Texas Penal Code.

reasons. The State represented to the trial court that only three officers were in appellant's pod on the day of the incident, one who had no testimony to provide regarding the incident, and two others (Officers Rodgers and Cutler) who testified at trial. The trial court asked appellant's counsel if he planned to file a motion for a new trial based on the new information appellant presented during the punishment phase, and trial counsel responded that he did not believe there were grounds to support such a motion.

**Ineffective Assistance of Counsel**

Appellant argues on appeal that he received ineffective assistance of counsel. We disagree.

## A. Applicable Law

To prove that trial counsel provided ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that (1) trial counsel's performance was deficient and (2) that deficiency prejudiced him, meaning that there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Martinez v. State*, 449 S.W.3d 193, 204 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Failure to satisfy one prong of the test eliminates a court's need to consider the other prong. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

First, it must be established whether trial counsel's performance fell below an objective standard of reasonableness. *Martinez,* 449 S.W.3d at 204 (citing *Robertson v. State,* 187 S.W.3d 475,483 (Tex. Crim. App. 2006)). There is a strong presumption that trial counsel's conduct falls within a wide range of reasonableness and constitutes a "sound trial strategy." *Strickland*, 466 U.S. at 689; *Martinez*, 449 S.W.3d at 204. Unless appellant provides a record that affirmatively demonstrates that counsel's performance was not a product of sound trial strategy, a reviewing court will presume that counsel's performance was constitutionally adequate. *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008). However, trial counsel's performance may still fall below an objective standard of reasonableness when no reasonable trial strategy would justify trial counsel's conduct, even when trial counsel's subjective reasoning is adequately reflected in the record. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Under the second prong of the *Strickland* test, the appellant establishes prejudice by showing that there is a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687. When the appellant demonstrates that his counsel's errors were so serious that they deprived the appellant of a fair trial, the second prong is satisfied. *Id.*

Although an appellant may claim ineffective assistance of counsel for the first time on direct appeal, the record in such a case often will not be sufficient to overcome the presumption that counsel's conduct was reasonable and professional. *Washington v. State*, 417 S.W.3d 713, 724 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008)). In such a case, we will not find deficient performance unless counsel's conduct is so outrageous that no competent attorney would have engaged in it. *Id*. (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

**B.    Failure to Investigate**

Appellant complains that his trial counsel was ineffective for failing to investigate. An attorney representing a criminal defendant has a duty to make a reasonable investigation. *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003). A "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id*. We will reverse a conviction for failure to investigate only if the failure to investigate resulted in the only viable defense available to the accused not being advanced, and there is a reasonable probability that, but for counsel's failure to advance the defense, the trial's outcome would have been different. *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998).

To conduct the prejudice inquiry, we must compare the evidence presented by the State with the evidence the jury did not hear due to trial counsel's failure to investigate. *Perez v. State*, 310 S.W.3d 890, 896 (Tex. Crim. App. 2010).

In this case, there is no evidence in the record showing that appellant was prejudiced by counsel's purported failure to investigate by not speaking with the other officers appellant claims could have testified that the substance appellant threw at Officer Rodgers was not urine or feces. Although Officer Rodgers's supervisor might have been a favorable defense witness based on appellant's assertions, the State represented to the trial court that the supervisor would not have been able to testify about the odor of the substance. Moreover, there is no testimony or other evidence in the record to show that the supervisor was available to testify, exactly what that testimony would have been, or that it would have favored appellant. This deprives us of the ability to determine whether the absence of the supervisor's testimony affected the verdict. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) ("[c]ounsel's failure to call witnesses at guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony."). Without reaching the question of whether appellant's counsel's representation of appellant was deficient for failure to investigate, we hold that this record does not demonstrate *Strickland* prejudice based on the absence of this witness at trial.

9

## C. Failure to Request Rule 404(b) Notice

Trial counsel may be found to have rendered deficient performance by failing to file certain pretrial instruments. *Ex parte Menchaca*, 854 S.W.2d 128, 133 (Tex. Crim. App. 1993) (en banc). In *Menchaca*, the pivotal part of the drug case was the competing testimony between the defendant and an undercover police officer. *Id*. at 129. The defendant and other witnesses testified that the undercover police officer held animus toward the defendant due to a confrontation about the undercover police officer's dancing with the defendant's girlfriend. *Id*. Trial counsel failed to file a motion in limine before the defendant testified, and the prosecutor elicited testimony on cross-examination about the defendant's prior conviction for rape that was inadmissible under rule 609 of the Texas Rules of Evidence. *Menchaca*, 854 S.W.2d at 129. The Texas Court of Criminal Appeals held that counsel's failure to file a motion in limine, object to questions about the prior conviction, or request a limiting instruction, in addition to counsel's referencing the prior conviction during closing argument, "undermined applicant's credibility, which was at the very heart of his defense," thus constituting deficient performance that could not be explained as sound trial strategy. *Id*. at 133.

Requests for notice under rule 404(b) of the Texas Rules of Evidence serve a similar function. To avoid surprises during trial, rule 404(b) requires the prosecutor to give reasonable notice before trial begins if the prosecution intends to introduce

evidence—other than that arising in the same transaction—in its case-in-chief. TEX. R. EVID. 404(b); *Rodriguez v. State*, 546 S.W.3d 843, 863 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Worthy v. State*, 337 S.W.3d 34, 37 (Tex. Crim. App. 2010).

The notice requirement is only triggered by a timely request by the accused. *See Webb v. State,* 995 S.W.2d 295, 298 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that defendant's failure to ask State to give notice of its intent to introduce extraneous offense evidence precluded any complaint about sufficiency of notice he was given); *see also Hernandez v. State*, 914 S.W.2d 226, 235 (Tex. App.—Waco 1996, no pet.) (holding three days' notice was untimely where defendant filed request for notice of extraneous bad-act evidence). When a defendant requests notice of extraneous offense evidence, it triggers the State's duty to provide reasonable notice. *Webb v. State*, 36 S.W.3d 164, 176-77 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

We have previously held that trial counsel's failure to file pre-trial motions is not categorically deemed ineffective assistance of counsel because trial counsel may decide not to file pre-trial motions as part of his trial strategy. *See Campise v. State,* No. 01-22-00223-CR, 2023 WL 5111009 (Tex. App.—Houston [1st Dist.] Aug. 10, 2023, no pet.) (citing *Martinez*, 449 S.W.3d at 208). Usually, the record is silent as to trial counsel's strategy regarding whether to pursue a particular pre-trial

11

motion, causing us to presume that counsel's performance is not deficient. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *see Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (declining to assume that trial counsel lacked a strategic decision for not posing certain questions to the venire during voir dire).

This case is distinct from most claims of ineffective assistance of counsel on direct appeal because the record adequately reflects the failings of the trial counsel. *See Lopez* 343 S.W.3d at 143. Trial counsel's failure to file a request for notice of extraneous offense evidence was not a strategic decision, but a procedural misstep. On the record, trial counsel told the trial court that "[he] was not aware that [he] had to make [a] request for extraneouses [sic]" and "had no idea that there were extraneouses [sic] out there for [appellant]." Trial counsel did not expressly request either a continuance or exclusion of the evidence but argued that "[t]he other thing is timeliness. Because I don't believe that the defense was made aware of this until Friday of last week." Finally, trial counsel objected that the evidence was more prejudicial than probative. It was also apparent that trial counsel did not know who the State intended to call to testify regarding the extraneous conduct. *See Nance v. State*, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd) (noting that purpose of rule requiring notice by request is to prevent unfair surprises). Because trial counsel expressly claimed on the record that he was not aware of alleged

extraneous offenses and therefore did not request notice, we cannot afford the same presumption that his decision not to file a request was a product of strategic planning or sound trial strategy. *See Caballero v. State,* 695 S.W.3d 467, 485-86 (Tex. App.—Houston [1st Dist.] 2023, pet. ref'd) (declining to apply presumption where defense counsel admitted he had no strategic reason for failing to present exculpatory evidence).

Had trial counsel filed a request for notice, appellant would have been entitled to reasonable notice under Texas Rule of Evidence 404(b) because the State presented the evidence in its case-in-chief during the guilt-innocence phase, not during cross-examination or rebuttal. *See Webb*, 995 S.W.2d at 301. But because trial counsel failed to request notice of the State's intent to introduce extraneous offense evidence, the State was not required to give notice. *See Gullatt v. State*, 590 S.W.3d 20, 27 (Tex. App.—Texarkana 2019, pet. ref'd) (holding that eight days' notice was reasonable where there was no evidence in record that defendant requested notice). The extraneous act was alleged to have occurred two weeks before trial, and the State voluntarily provided notice the day after jury selection, one business day before presenting any evidence.

Had trial counsel triggered the notice requirement, the trial court could have acted within its discretion to do one of two things to remedy the late notice. The trial court could have excluded the extraneous allegation due to the State's belated

notice. *See Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) ("[s]ince the notice requirement of Rule 404(b) is a rule of evidence admissibility, then it is error to admit Rule 404(b) evidence when the State has not complied with the notice provision of Rule 404(b)"). In the alternative, the trial court could have granted a continuance to reduce the surprise. *See id.* However, the Texas Court of Criminal Appeals has explained that "a trial court must use [its] powers to ensure compliance and not to excuse noncompliance." *Id.* Appellant was not entitled to such relief in the trial court in this case, as his counsel failed to request notice or a continuance. *Sanders v. State*, 191 S.W.3d 272, 276-77 (Tex. App.—Waco 2006, pet. ref'd) (holding denial of continuance for late-disclosed extraneous offense evidence not an abuse of discretion where defendant failed to request notice).

The purpose of the extraneous offense evidence notice requirement is to avoid unfair surprises and enable the defendant to prepare to answer the extraneous offense evidence. *Rogers v. State*, No. 01-02-01024-CR, 2004 WL 253265, *8 (Tex. App.—Houston [1st Dist.] Feb. 12, 2004, pet. ref'd) (mem. op., not designated for publication). Generally, when we look at whether the trial court's overruling trial counsel's objection based on lack of sufficient notice as to some extraneous offenses was erroneous, we analyze whether and how the notice deficiency affected the appellant's ability to prepare for the evidence. *Id.* Here, counsel said on the record that, given the untimely notice by the State, he did not

have an opportunity to investigate the extraneous act. While, normally, a direct appeal is inadequate to show counsel's conduct fell below an objectively reasonable standard, we cannot ignore here that the record shows that trial counsel's conduct was not the product of trial strategy. *See Andrews*, 159 S.W.3d at 102; *Caballero,* 695 S.W.3d at 486.

Therefore, we must find that trial counsel's failure to request notice under Rule 404(b) was deficient performance and not a sound trial strategy, and his conduct thereby satisfies the first prong of the *Strickland* test. *See Menchaca*, 854 S.W.2d at 133.

## D. Prejudice from Admission of Extraneous Offense

To demonstrate prejudice, appellant must show that there is a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687; *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). A reasonable probability is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. It is not enough for appellant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, he must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

15

Evidence of extraneous offenses can be inherently prejudicial. *See Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983) (acknowledging evidence of extraneous robbery bolstered circumstantial evidence of appellant being merely present during subsequent robbery of same location). When the case involves only the testimony from the defendant and the State's witnesses, the importance of the defendant's credibility is amplified. *Theus v. State,* 845 S.W.2d 874, 881 (Tex. Crim. App. 1992).

The evidence presented at trial concerning whether the substance was composed of urine and feces rested on the appellant's testimony versus that of the State's witnesses. However, unlike the evidence in *Menchaca*, the evidence of this extraneous bad act was admissible against appellant in the State's case-in-chief to show intent, preparation, or plan. TEX. R. EVID. 404(b)(2). As such, even if trial counsel had requested notice, the trial court would have acted within its discretion to admit the evidence and grant a continuance to allow the defense more time to prepare. TEX. CODE CRIM. PROC. art. 29.13 (continuance may be granted when "it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had"). Indeed, trial counsel would have needed to request a continuance to preserve the

error for our review. *See Francis v. State*, 445 S.W.3d 307, 319 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014).

We have previously held that a defendant was not prejudiced by defense counsel's failure to request notice of extraneous offenses, although under different circumstances than those in this case. *Martinez*, 449 S.W.3d at 207-09. In *Martinez*, the appellant's counsel failed to request notice of extraneous offenses the State intended to introduce at the punishment phase of a bench trial for aggravated sexual assault. *Id*. at 207. Without advance notice, the court heard extraneous offense evidence that (1) the defendant stood over his daughters while they were asleep holding an axe and making chopping motions; (2) when the police arrived after the complainant called 9-1-1, the defendant lied and said that they had called 9-1-1 because they heard thieves outside their home; and (3) the defendant told a co-worker that he purchased a gun in case he ever saw the complainant with someone else. *Id*. We held that the defendant in *Martinez* had not established that there was a reasonable probability that the trial court would have assessed a less severe sentence, where the trial court sentenced the defendant to 17 years and 200 days, on the lower end of the first-degree punishment range of 5 to 99 years. *Id*. at 208-09.

Courts may look to jury questions in determining whether a defendant was prejudiced by counsel's deficient performance. *Menchaca*, 854 S.W.2d at 130. In

17

*Menchaca*, during jury deliberations, the jury sent notes asking to review the State's evidence and claiming to be "deadlocked." *Id*. Eventually, the trial court gave an *Allen*[2] charge to the jury and the jury returned a guilty verdict 40 minutes later. *Id*. The Texas Court of Criminal Appeals held that the defendant was prejudiced by counsel's error and noted that "the jury struggled with the testimony." *Id*. at 129, 133.

Here, the jury was given the following instruction regarding extraneous offense evidence:

> You are further instructed that if there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this cause, you cannot consider such evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offense or offenses, if any, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose.

On January 22, 2024, the first day of deliberation, the jury submitted a note asking, "[d]o we have to believe it was urine beyond a reasonable doubt to find him guilty[?]" The court responded affirmatively. On the following day, the jury asked to "see the transcripts of Ortiz," which suggests that the jury was focused on the

---

[2]     An *Allen* charge, or "dynamite charge," is one the trial court gives to a jury to continue deliberating to reach a verdict, if possible, where the jury indicates it is deadlocked. *Allen v. United States*, 164 U.S. 492 (1896).

evidence of the charged offense because Deputy Rossel-Ortiz was a witness to the charged offense, not the extraneous offense. The deliberations continued into the second day, and at one point the jury reached an impasse. However, it ultimately rendered a guilty verdict following the trial court's reading of the *Allen* charge. Based on this record, we cannot say that there is a reasonable probability that the outcome would have been different. The jury would likely have heard the same extraneous offense evidence because it was admissible.[3] And even if appellant's counsel had requested timely notice, the trial court likely would have granted a continuance[4] to cure the State's late notice, considering the extraneous conduct took place shortly before trial began. Thus, hearing the same evidence, the jury likely would have reached a guilty verdict as to the charged offense.

Because this record does not show that there was a reasonable probability that the jury's verdict would have been different had trial counsel requested notice of the State's intent to introduce evidence of an extraneous offense, appellant was not prejudiced by trial counsel's deficient performance. *See Martinez*, 449 S.W.3d at 207-09.

## Conclusion

Having found no reversible error, we affirm the judgment of the trial court.

---

3        TEX. R. EVID. 404(b)(2).
4        TEX. CODE CRIM. PROC. art. 29.13.

Amparo "Amy" Guerra
Justice

Panel Consists of Justices Guerra, Gunn, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).