# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00289-CR

**Rafael Hernandez-Prado, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 9767, HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Rafael Hernandez-Prado was charged with burglary of a habitation with intent to commit the offense of sexual assault.[1]  *See* Tex. Penal Code § 30.02(a)(1) (setting out elements of offense).  The victim in this case was Maria Irene Gonzalez, and the offense was alleged to have occurred in Burnet County.  Hernandez-Prado entered into a plea agreement with the State in which he agreed to plead guilty in exchange for the State recommending that his adjudication of guilt be deferred and that he be placed on community supervision for ten years.  In accordance with that agreement, Hernandez-Prado pleaded guilty to the charged offense, and the district court deferred his adjudication of guilt and placed him on community supervision for ten years.  Almost ten years

---

[1] Although the district court's order deferring adjudication, the judgment adjudicating guilt, and Hernandez-Prado's brief on appeal reflect that Hernandez-Prado's first name is spelled "Rafeal," the indictment, the notice of appeal, and the documents in the record in which Hernandez-Prado signed his name all show that his first name is spelled "Rafael."  We will use the spelling that Hernandez-Prado himself uses and that is reflected in the notice of appeal.

later, the State filed a motion to adjudicate alleging that Hernandez-Prado had violated the conditions of his community supervision. In response, Hernandez-Prado filed a motion to quash the State's motion to adjudicate, but the district court denied Hernandez-Prado's motion. After convening a hearing and considering the arguments from the parties, the district court found some of the alleged violations to be true and issued a judgment adjudicating Hernandez-Prado's guilt and sentencing him to fifteen years' imprisonment. *See id.* § 30.02(d) (specifying that offense is first-degree felony if "the premises are a habitation" and if "any party to the offense entered the habitation with intent to commit a felony other than felony theft"); *see also id.* § 12.32 (listing permissible punishment range for first-degree felony). In four issues on appeal, Hernandez-Prado contends that the evidence was insufficient to support the district court's findings that he violated the terms of his community supervision, that the district court erred by denying his motion to quash, and that the court costs, attorney's fees, and fine assessed as part of his sentence were not proper. We will modify the district court's judgment adjudicating Hernandez-Prado's guilt and, as modified, affirm the district court's judgment.

## BACKGROUND

As set out above, Hernandez-Prado was charged with the offense of burglary of a habitation with intent to commit sexual assault, and he pleaded guilty to the offense under the terms of a plea-bargain agreement with the State. As part of the agreement, the State agreed to recommend that the district court defer adjudication and that Hernandez-Prado be placed on community supervision, and he signed and agreed to abide by the terms and conditions of his community

2

supervision, including several supplemental terms and conditions for sex offenders. The relevant

terms and conditions imposed the following obligations:

> 5. Report in person immediately to the Probation Officer of the Community Supervision and Corrections Department of  Burnet  County, Texas, and thereafter report at such other times and in such manner as directed by the Court or the Probation Officer.
>
> . . .
>
> 11. Notify the Probation Officer of any change of address or employment within 5 days of such change.
>
> . . .
>
> 13. Participate and work, without compensation, ten hours per month in a community service program or task as directed by the Probation Officer for a total of  750  hours.

The terms and conditions also required Hernandez-Prado to pay a $2,000 fine and

to pay court-appointed attorney's fees.[2]  The relevant supplemental terms and conditions for sex

offenders required Hernandez-Prado to perform the following:

---

[2] One of the terms and conditions of Hernandez-Prado's community supervision required him to do the following: "Remain within the limits of _____ unless given permission by the Probation Officer to leave such limits."  In its motion to adjudicate Hernandez-Prado's guilt and revoke his community supervision, the State alleged that he violated this term but added additional elements that were not originally included.  In particular, although the State's motion tracked the language of the condition, the State alleged that the condition required Hernandez-Prado "to remain within the limits of JUANAGATO, MEXICO," but the signed version did not list a geographical limitation and instead, as shown above, had a blank entry in the portion requiring him to stay in a particular region.  Ultimately, the district court did not find that this condition had been violated, but the condition is discussed in one of Hernandez-Prado's issues on appeal.

3

1. Undergo psychiatric and/or psychological testing and evaluation by a licensed sex offender provider, within 90 days of probation date as directed by the Probation Officer and pay the cost of same.

2. Attend, participate and complete a psychiatric and/or psychological counseling program with a licensed sex offender provider, as directed by the Probation Officer and pay the cost of the same. Remain in said program until successfully discharged by the sex offender program.

5. Submit [] a blood sample or other specimen to the Department of Public Safety under Subchapter G, Chapter 411, Government Code, for the purpose of creating a DNA recording and pay cost of the same.

6. Submit to polygraph testing as directed by the Community Supervision Officer or the therapist and pay cost of the same.

At the start of the plea hearing, Hernandez-Prado's attorney informed the district court that Hernandez-Prado could not speak or read English, and his attorney offered to interpret the proceedings for him. When approving Hernandez-Prado's attorney as an interpreter, the district court explained that it "knows counsel to be proficient in Spanish." Later in the hearing, the district court went over the terms of the plea-bargain agreement with Hernandez-Prado, inquired whether he understood all of the rights that he was waiving by entering a guilty plea, asked whether he was freely and voluntarily entering his plea, informed him that a plea of guilty could result in his deportation and impact his ability to become a citizen of the United States, accepted his plea, and discussed the terms of his community supervision. In addition, his attorney related during the hearing that an immigration hold had been placed on him. *See Martinez v. State*, 449 S.W.3d 193, 203 n.3 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (explaining that "'ICE hold' or 'ICE detainer' is a notice that the Department of Homeland Security issues to federal, state, and local law enforcement agencies to inform the agency that Immigration and Customs Enforcement

('ICE')" intends to take custody of person "in the law enforcement agency's custody"). In light of the immigration hold, the district court emphasized repeatedly that if Hernandez-Prado was deported and returned to the United States, he had to "report to the probation department within 24 hours" and that a failure to report would be a violation of his community supervision, and Hernandez-Prado stated that he understood. When the district court orally pronounced that it was deferring Hernandez-Prado's adjudication, the district court stated that he was required to pay a $2,000 fine and imposed "court-appointed attorney[']s fees of $350." The district court's order similarly required Hernandez-Prado to pay the $2,000 fine and also required him to pay $213 in court costs.

A few weeks before the expiration of Hernandez-Prado's community supervision, the State moved to adjudicate his guilt, and a capias was issued for his arrest. Hernandez-Prado was not arrested until approximately one year after his community supervision would have ended. *See* Tex. Code Crim. Proc. art. 42.12, § 5(h) (explaining that if period of community supervision has expired, trial court has jurisdiction over motion to adjudicate if motion was filed and capias issued before end of period of community supervision). In its motion to adjudicate Hernandez-Prado's guilt, the State alleged that all of the terms and conditions listed above as well as others were violated.[3] When referring to condition eleven, which required Hernandez-Prado to notify his probation officer if he changed his address, the State asserted that the condition was violated because Hernandez-Prado had returned to the United States without notifying his probation officer.

---

[3] In its motion, the State alleged that supplemental conditions eight and nine were violated, but the summary of the conditions at issue as well as the State's allegations in its motion show that the State was referring to supplemental conditions five and six. Consistent with the numbering provided in the State's motion, the district court later determined that supplemental conditions eight and nine were violated, but the testimony and arguments presented at trial similarly reveal that the district court was referring to supplemental conditions five and six.

In a preliminary hearing regarding the motion to revoke, the State called Officer Franklin Randolph to the stand, and he testified that he initiated a traffic stop of a car driven by Hernandez-Prado and issued him a ticket for not wearing his seatbelt. When describing this incident, Officer Randolph explained that the incident occurred in 2007, which was a few years after Hernandez-Prado had been placed on community supervision but several years before the expiration of his community supervision. Further, although Officer Randolph did not identify Hernandez-Prado because he was not present for that hearing, Officer Randolph did testify that the person who he issued the ticket to was the same person who appeared in Hernandez-Prado's "book-in photograph," which was taken when Hernandez-Prado was arrested after the capias was issued in this case. Moreover, Hernandez-Prado raised no objection regarding the manner in which Officer Randolph identified him either during that preliminary hearing or during the hearing on the motion to adjudicate when the district court agreed to take judicial notice of Officer Randolph's prior testimony, and Hernandez-Prado agreed "to stipulate that that would be his testimony when this case is called for a contested motion to revoke."

During the hearing on the motion to adjudicate, the State called Jeanette Murray to the stand. Murray was the community-supervision officer assigned to Hernandez-Prado at the time that he entered his plea. In her testimony, Murray explained that she went over the terms and conditions of community supervision with Hernandez-Prado by having his lawyer translate them to Spanish and emphasized that all of the conditions were explained to him.[4] Regarding this exchange,

---

[4] After Murray concluded her testimony, Hernandez-Prado called Tomas Leon to the stand. Leon was the certified interpreter who had been assigned to the adjudication hearing, and he testified regarding the importance of having a certified interpreter translate legal documents and court proceedings.

Murray recalled that she went through all of the conditions, including those specific to sex offenders, and waited for Hernandez-Prado to answer that he understood and that she took "specific care" to ensure that he understood each condition "because of the gravity of" the sex-offender requirements. In addition, Murray explained that because Hernandez-Prado was going to be deported, she told him that "if he ever returned to the United States he . . . [had] to immediately report to" her and gave him a business card with her contact information on it, but Murray related that he never contacted her and never informed her that he had left Mexico and returned to the United States.

Regarding the alleged violations at issue in this case, Murray stated that Hernandez-Prado talked with her in the courtroom but never reported to her department or had any contact with her again, that he had not undergone any psychiatric or psychological evaluation or treatment, that he never submitted a blood sample, and that he never submitted to polygraph testing. In addition, Murray clarified that if Hernandez-Prado were in Mexico, it would not have been possible for him to complete the 750 hours of community service or the four supplemental sex-offender conditions that were at issue in this case because her department did not have any employees or agents in Mexico or any programs allowing for a person to do community service while in Mexico.

After considering the arguments by the parties, the district court determined that Hernandez-Prado had violated all of the terms and conditions of his community supervision discussed above. Following that determination, the district court sentenced Hernandez-Prado to fifteen years' imprisonment. When the district court orally pronounced its judgment, it stated that there were "court costs of $50 and court-appointed attorney[']s fees" but made no mention of the $2,000 fine imposed when his adjudication was deferred. Similarly, the judgment adjudicating Hernandez-Prado's guilt provided that he had to pay $50 in court costs and $600 in court-appointed

7

attorney's fees and stated that he acknowledged his ability to pay his court-appointed attorney's fees, but the judgment did not require him to pay the fine previously imposed. However, the bill of costs shows that Hernandez-Prado owes, among other things, $350 in court-appointed attorney's fees and a $2,000 fine.

**STANDARD OF REVIEW**

Appellate courts review a decision to adjudicate guilt in the same way that courts review a community-supervision revocation in which the adjudication of guilt was not deferred. Tex. Code Crim. Proc. art. 42.12, § 5(b); *Leonard v. State*, 385 S.W.3d 570, 573 n.1 (Tex. Crim. App. 2012) (explaining that adjudication hearings "are a subset of revocation hearings"). A trial court's decision to revoke community supervision is reviewed under an abuse-of-discretion standard of review. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

An order that revokes community supervision must be supported by a preponderance of the evidence. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In this context, "'a preponderance of the evidence' means 'that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation.'" *Rickels*, 202 S.W.3d at 763-64 (quoting *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). When making its determination, a trial court may make reasonable inferences from the evidence. *See id.* at 764. In addition, appellate courts review the evidence presented during the hearing in the

8

light most favorable to the trial court's ruling. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981). The violation of a single condition of community supervision is sufficient to support a revocation determination. *Jones v. State*, 472 S.W.3d 322, 324 (Tex. App.—Eastland 2015, pet. ref'd) (mem. op.). Accordingly, "to prevail on appeal, the defendant must successfully challenge all of the findings that support the" trial court's "revocation order." *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

## DISCUSSION

In his first issue on appeal, Hernandez-Prado contends that the "evidence adduced at the hearing is" insufficient to support a finding that he "violated the terms of his community supervision." In a related argument, he urges in his second issue that the district court improperly found that he violated the terms of his community supervision because his alleged failures to comply were "due to circumstances beyond his control." Specifically, he argues that during the relevant time, he was either in the custody of the United States due to an immigration hold or in Mexico and, therefore, that he "could not comply." In his third issue, he asserts that the district court erred by denying his motion to quash the State's adjudication request because the State failed "to provide constitutionally adequate notice of the alleged violations of" his community supervision. Finally, in his last issue, he challenges the imposition of court costs, fees for his court-appointed counsel, and the $2,000 fine.

**Evidence Supporting Hernandez-Prado's Adjudication of Guilt**

When challenging the sufficiency of the evidence, Hernandez-Prado highlights the testimony from Murray in which she stated that it would not be possible for him to comply with

9

many of the conditions if he was in Mexico and asserts that there is no evidence establishing when he returned to the United States after being deported. In fact, Hernandez-Prado asserts that the only "concrete evidence of [his] presence in the United States" is the execution of the capias for his arrest, but he notes that the capias was not executed until "after the expiration of his community supervision period." Moreover, although Hernandez-Prado acknowledges that Officer Randolph testified that he gave a citation to Hernandez-Prado during the period of his community supervision and that the person that he gave the citation to matched Hernandez-Prado's "book-in" photograph taken in this case after the State moved to adjudicate, Hernandez-Prado contends that the testimony is insufficient because Officer Randolph did not identify Hernandez-Prado in person and because the photograph was never admitted into evidence. Accordingly, Hernandez-Prado insists that his revocation was based on the "mere suspicion" that he had returned to Texas and been given a citation by Officer Randolph.

As support for his arguments, Hernandez-Prado principally relies on a prior case by this Court. *See Vidal v. State*, 167 S.W.3d 897 (Tex. App.—Austin 2005, no pet.). In that case, the written conditions and terms of Vidal's community supervision provided that Vidal was required "to report monthly to his community supervision officer" and that "[w]hen defendant is released from custody of United States Immigration and Naturalization Service and if defendant is in the United States, report to the Bell/Lampassas County Community Supervision and Corrections Department for further orders of the Court." *Id.* at 898. This Court determined that when those conditions were "[r]ead together," they "required Vidal to report to the Bell County community supervision office upon his return to the United States, and to thereafter report monthly." *Id.* at 899. When moving to revoke Vidal's community supervision, the State asserted that Vidal had failed to report to his

10

community-supervision officer in 2001, 2002, and 2003, but Vidal was arrested in 2004. *Id.* at 898.

When determining that the trial court abused its discretion by revoking Vidal's community supervision,

we explained as follows:

> We know that Vidal was in the United States on February 28, 2004, when he was arrested on the capias. There is no evidence, however, as to when Vidal returned to the United States. Most importantly, there is no evidence that Vidal was in the United States and outside INS custody during the time period alleged in the motion to revoke. Without such evidence, the State did not prove that Vidal's failure to report to the probation office during the months alleged was a violation of the conditions of his supervision."

*Id.* at 899.

Even though this Court determined that the State failed to prove a violation of Vidal's

community supervision, we do not believe that the facts and circumstances of the current case

compel a similar result. As a preliminary matter, we note that unlike the current case, the written

terms and conditions in *Vidal* directly addressed the possibility of Vidal being placed in the custody

of the United States and being deported and, as this Court reasoned, seemed to excuse compliance

with the obligation to report to Vidal's community-supervision officer in the event that Vidal was

deported but revived that obligation once Vidal returned to the United States. In the present case,

the written terms and conditions make no mention of Hernandez-Prado's possible deportation, nor

do they attempt to modify his obligations in the event that he was deported. This Court addressed

a similar set of circumstances in a case after *Vidal*. *Cf. Jaimes v. State*, No. 03-10-00813-CR,

2012 WL 413926, at *2 (Tex. App.—Austin Feb. 10, 2012, pet. ref'd) (mem. op., not designated

for publication). In *Jaimes*, like in *Vidal*, the defendant was required "to report monthly" to his

11

community-supervision officer, had been placed on an immigration hold, had been deported, and returned to the United States. *Id.* When determining whether the evidence established that a violation occurred, this Court determined that Jaimes had violated the terms of his community supervision because the conditions required him to regularly report to his community-supervision officer but, unlike the conditions in *Vidal*, did not require "him to report monthly only *after* he was outside INS or ICE custody and had returned to the United States." *Id.* Accordingly, this Court concluded that the State was "not required to prove that Jaimes was either outside of INS or ICE custody and/or in the United States . . . in order for his failure to report to be a violation of one of the conditions of his community supervision." *Id.*

In the present case, the district court orally instructed Hernandez-Prado during the plea hearing that he was obligated to report to the Community Supervision and Corrections Department within 24 hours of returning to the United States, but it is not entirely clear that the district court's warning provided the type of modification present in *Vidal* that served to excuse noncompliance until the defendant returned to the United States and that required proof that the defendant had returned to the United States in order for there to have been a violation. *Cf. Eubanks v. State*, 599 S.W.2d 815, 817 (Tex. Crim. App. 1980) (explaining that written order of court controls over oral announcement). Even assuming that the district court's instructions could be read as having an effect similar to the written condition in *Vidal*, we do not believe that the analysis from *Vidal* would apply because, unlike in *Vidal*, there was evidence presented in this case indicating that Hernandez-Prado was present in the United States and present in Burnet County during the compliance period at issue. As discussed previously, Officer Randolph testified that he issued a

12

citation to Hernandez-Prado in Burnet County a few years after Hernandez-Prado was placed on community supervision and before the expiration of the ten-year period of community supervision and that the person that he gave the citation to was the same person appearing in Hernandez-Prado's photograph taken in this case after the capias was issued for his arrest. Although Hernandez-Prado attempts to assert that Officer Randolph's testimony did not adequately identify him, he made no objection to the Officer's testimony and stipulated that the Officer would provide similar testimony if he were called back to the stand during the actual adjudication hearing. *Cf. Mendoza v. State*, 443 S.W.3d 360, 363 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (explaining that "[t]he failure to complain or object in the trial court to in-court identifications waives any complaint regarding the in-court identifications on appeal"). Further, the return on the capias issued for his arrest showed that Hernandez-Prado was also arrested in Burnet County. Accordingly, when the evidence is viewed in the light most favorable to the district court's ruling and in light of the inferences that the district court could make from the evidence presented, we believe that the district court could have reasonably determined that Hernandez-Prado returned to the United States and was in Burnet County prior to the expiration of his period of community supervision and was obligated to comply with the obligations imposed as part of his community supervision.

Regarding the actual conditions that he was alleged to have violated, Hernandez-Prado contends that the evidence is insufficient to establish that he failed to inform his community-supervision officer of a change of address because the evidence did not establish that he was living in the United States and that the evidence is insufficient to establish that he violated the other conditions because those conditions "were to be done as directed by probation" and because "[n]o

13

evidence was introduced showing how [he] was directed to complete community service hours, how he was to undergo a psychological or psychiatric evaluation, [] how he was to participate in counseling with a license[d] sex offender therapist," "how [he] was directed to submit to a polygraph[,] or how he was directed to submit a DNA sample to DPS."

As set out above, during the plea hearing, the district court warned Hernandez-Prado that if he returned to the United States, he was required to report to his community-supervision officer, and the warning as well as the conditions of his community supervision were translated by Hernandez-Prado's lawyer and conveyed to him. Moreover, Murray testified that after the plea hearing was concluded, she met with Hernandez-Prado, went over the terms of his community supervision, told him that he had to report to her immediately if he returned to the United States, gave him her contact information, and had his lawyer translate the conditions into Spanish, and she also explained that she went through the conditions carefully to make sure that he understood what he was required to do and that he indicated that he understood. Finally, Murray related that, among other things, Hernandez-Prado never contacted her or reported to her department and never submitted a blood sample as required.

Accordingly, even assuming, as suggested by Hernandez-Prado, that his compliance with the terms and conditions of his community supervision depended on him being directed by his community-supervision officer, Murray's testimony demonstrates that the lack of direction was facilitated by Hernandez-Prado never attempting to contact her to receive instructions even though he had her contact information and was aware of his obligation to contact her and to comply with the conditions of his community supervision. Viewing the evidence summarized above in the light most favorable to the district court's findings, we must conclude that the preponderance of the

14

evidence supports the district court's determination that Hernandez-Prado violated the terms and conditions of his community supervision by, among other things, failing to provide "a blood sample or other specimen" as required. Given that evidence of a single violation can support a revocation of community supervision and adjudication of guilt, we need not address the other alleged violations.

For all of these reasons, we overrule Hernandez-Prado's first issue on appeal.

**Ability to Comply**

When challenging the district court's adjudication of his guilt in his second issue, Hernandez-Prado argues that his due-process rights were violated in this case when the district court revoked his community supervision and adjudicated his guilt because it was impossible for him to comply with the terms and conditions of his supervision. *See Cox v. State*, 446 S.W.3d 605, 613 (Tex. App.—Texarkana 2014, pet. ref'd) (stating that due process was "offended in finding a violation" of community supervision where compliance was extremely difficult if not impossible). Specifically, he urges that he could not have complied because he was either under an immigration hold or in Mexico during the period of his community supervision. *See Vidal*, 167 S.W.3d at 899 (explaining that "[i]t was impossible for Vidal to report to a Bell County community supervision officer if he was in the custody of immigration authorities or if he was deported to Mexico"). As support for his arguments, Hernandez-Prado again points to the testimony from Murray in which she explained that it would not be possible for him to comply with at least some of the terms and conditions of his community supervision if he were in Mexico. Further, he repeats his arguments that he was not given direction by his community-supervision officer regarding how to comply with the requirements imposed on him.

15

In the previous issue, we explained that the evidence presented during the adjudication hearing indicated that Hernandez-Prado was in the United States and was in Burnet County a few years after being placed on community supervision and several years before the completion of the ten-year period of supervision, had been repeatedly told by the district court and by Murray to immediately contact Murray if he returned to the United States in order to ensure that he complied with the terms and obligations of his community supervision, that Murray gave him her contact information, that he made no effort to contact Murray, and that he failed to comply with the terms and conditions by failing to, among other things, submit a blood or a similar sample.

For these same reasons, we must also disagree with Hernandez-Prado's assertions that the evidence established that it was impossible for him to comply with the terms and conditions of community supervision and, therefore, that his due process rights were violated when the district court determined that he had failed to comply. Accordingly, we overrule Hernandez-Prado's second issue.

**Motion to Quash**

In his third issue on appeal, Hernandez-Prado asserts that the district court erred by denying his motion to quash the State's adjudication request because the State failed "to provide constitutionally adequate notice of the alleged violations of" his community supervision. In his motion to quash, Hernandez-Prado noted that the State asserted in its motion seeking to adjudicate his guilt that he "failed to report in person to the Probation Officer of the Community Supervision and Corrections Department of BURNET County, Texas, and thereafter report at such other times and in such other manner as directed by the Court or the Probation Officer." After referring to this allegation, Hernandez-Prado asserted that it did not provide him with adequate notice to defend

16

himself. Hernandez-Prado did not challenge the other allegations in the State's motion that the district court found to be true.[5]

Given that the revocation of community supervision results in a loss of someone's liberty, revocation proceedings must provide a defendant with due process. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781-83 (1973); *Leonard*, 385 S.W.3d at 577. Among other things, the defendant must be provided with written notice regarding the alleged violations of his community supervision. *Gagnon*, 411 U.S. at 786; *Ex parte Carmona*, 185 S.W.3d 492, 495 (Tex. Crim. App. 2006). Further, the State's motion must clearly and fully set out the alleged violations. *Labelle v. State*, 720 S.W.2d 101, 104 (Tex. Crim. App. 1986); *see Graham v. State*, 502 S.W.2d 809, 811 (Tex. Crim. App.

---

[5] The only other ground that Hernandez-Prado attacked in his motion to quash was the ground presented by the State alleging that he "failed to remain within the limits of JUANAGATO, MEXICO unless given permission by the Probation Officer to leave such limits. Defendant returned to the United States without permission. Defendant received a ticket for no seat belt on December 18, 2007, by the Texas Highway Patrol in Burnet County, Texas." In his motion and during the hearing, Hernandez-Prado asserted that the State's allegation did not provide him with adequate notice to defend himself. Further, during the hearing Hernandez-Prado pointed out, as discussed above, that the condition of community supervision at issue did not actually list the location in Mexico in which he was required to reside.

On appeal, Hernandez-Prado attacks this allegation on various grounds, including that he was not provided with adequate notice and that this type of condition is impermissible. *See Gutierrez v. State*, 380 S.W.3d 167, 170, 177 (Tex. Crim. App. 2012) (explaining that trial court could not order as part of community supervision that defendant "leave the country and reside in a location where you do have a legally authorized status"). However, given that Hernandez-Prado was successful in convincing the district court that he did not violate the condition discussed above, we would be unable to conclude that he was harmed by the alleged failure to adequately provide him with notice of that purported violation. *See LaBelle v. State*, 720 S.W.2d 101, 107-08 (Tex. Crim. App. 1986) (stating that courts must determine whether defendant was harmed by lack of notice in motion to revoke); *Johnson v. State*, No. 12-05-00376-CR, 2007 WL 60767, at *3 (Tex. App.—Tyler Jan. 10, 2007, no pet.) (mem. op., not designated for publication) (noting in harm analysis that defendant convinced "the trial court that he was not responsible for the drug paraphernalia found near him").

1973). However, a State's motion to revoke does not need to provide the level of specificity that is required of an indictment in order to provide a defendant with the requisite due process. *Bradley v. State*, 608 S.W.2d 652, 655 (Tex. Crim. App. 1980). An allegation is sufficient if it specifies a violation and provides the defendant with fair notice of the alleged violation so that he can prepare a defense. *See id.*; *Spruill v. State*, 382 S.W.3d 518, 520 (Tex. App.—Austin 2012, no pet.).

On appeal and in his motion to quash, Hernandez-Prado primarily refers to *Graham v. State*, 502 S.W.2d 809 (Tex. Crim. App. 1973), as support for the proposition that he was not provided with adequate notice. In *Graham*, the State alleged, among other violations of his community supervision, that Graham had failed to report to his community-supervision "officer as directed." *Id.* at 810. In determining that Graham had not been afforded the required due process, the court of criminal appeals explained that the motion failed to provide notice sufficient to allow him to prepare a defense, in part, because "[n]o dates or other details were alleged." *Id.* at 811.

As an initial matter, we note that it is not entirely clear that the analysis from *Graham* would apply in this case because the alleged violation is not just that Hernandez-Prado failed to attend one or more of his regularly scheduled meetings; rather, the allegation is that he failed to *ever* meet with his community-supervision officer. In other words, the State alleged that he never reported to the Community Supervision and Corrections Department to meet with his community-supervision officer as required by his conditions of community supervision and, therefore, also never met with his community-supervision officer in accordance with a schedule that would have been arranged by the district court or the probation officer after the initial meeting. Accordingly, the failure to specify the dates on which Hernandez-Prado failed to meet with his community-supervision officer or other details seems less problematic in this case.

18

In any event, even if the motion to adjudicate was ineffective for failing to place Hernandez-Prado on notice as to how he violated this condition of his community supervision, the court of criminal appeals has clarified since *Graham* that appellate courts still have to assess whether the defendant was harmed by the lack of notice. *See LaBelle*, 720 S.W.2d at 107-08. Whether harm is present depends on the facts of the case, and the failure to provide adequate notice is only harmful if, in the context of that particular case, the lack of notice had an impact on the defendant's ability to prepare a defense. *Id.* Although the violation as alleged by the State did not provide dates or other details regarding how or when Hernandez-Prado violated the condition of community supervision, the wording of the allegation tracks the language of the condition of community supervision and clearly asserts that he never reported to the Community Supervision and Corrections Department as directed and did not, thereafter, meet with his community-supervision officer on scheduled visits. Moreover, although Hernandez-Prado argued that the alleged violation did not put him on notice regarding "what it is that he was suppose[d] to do," our review of the record shows that he understood the nature of the alleged violation. Specifically, he questioned Murray about this condition of community supervision and about whether he could comply with the obligation while he was living in Mexico and argued to the district court that he could not comply with the condition while he was in Mexico. Finally, Hernandez-Prado did not specify to the district court and does not discuss on appeal how his defensive strategy was affected by the lack of notice or what different defensive steps he would have taken had the proper notice been given.

In light of the preceding, we must conclude that Hernandez-Prado failed to show that he suffered any harm stemming from the alleged lack of notice. Accordingly, we overrule his third issue on appeal.

19

**Costs, Fees, and Fine**

In his final issue on appeal, Hernandez-Prado challenges the imposition of a fine as well as various costs and attorney's fees.

As set out above, the district court's order deferring Hernandez-Prado's adjudication required him to pay $213 in court costs and a $2,000 fine, and when the district court pronounced its ruling during the plea hearing, it similarly obligated him to pay the fine but also imposed "court-appointed attorney[']s fees of $350."[6] *See* Tex. Code Crim. Proc. art. 26.05(g). Moreover, the district court's judgment adjudicating his guilt required him to pay $50 in court costs and $600 in court-appointed attorney's fees and stated that he acknowledged his ability to pay his court-appointed attorney's fees, but the judgment did not mention the fine previously imposed. Similarly, when the district court pronounced its judgment, it stated that there were "court costs of $50 and court-appointed attorney[']s fees" but made no mention of the fine. In addition, the bill of costs documents that Hernandez-Prado has not paid and owes, among other things, $350 in court-appointed attorney's fees and the $2,000 fine.

On appeal, Hernandez-Prado acknowledges that he cannot challenge the imposition of court costs and court-appointed attorney's fees that were assessed by the district court when he was placed on community supervision and when his adjudication was deferred and surmises that some of the costs and fees imposed after his community supervision was revoked might have included unpaid costs and attorney's fees imposed when he was placed on community supervision.

---

[6] We note that although the district court stated that Hernandez-Prado was required to pay $350, the terms and conditions of Hernandez-Prado's community supervision specified that Hernandez-Prado was obligated to pay $450 in court-appointed attorney's fees.

*See Wiley v. State*, 410 S.W.3d 313, 318-21 (Tex. Crim. App. 2013) (determining that defendant waived his challenge to imposition of court-appointed attorney's fees at time that he was placed on community supervision because he did not appeal imposition of those fees when he was placed on community supervision and, therefore, could not challenge imposition of those fees after his community supervision was revoked). However, Hernandez-Prado urges that he can challenge the imposition of additional fees and costs that were added when his community supervision was revoked and insists that those additional fees and costs were improperly assessed because there was no evidence to support that he had the ability to pay those additional costs and fees. Further, he contends that the bill of costs improperly includes and obligates him to pay the $2,000 fine that was "imposed as part of deferred adjudication community supervision but not orally pronounced nor included in the judgment" adjudicating his guilt and revoking his community supervision. The State "concedes that there is insufficient evidence to support [Hernandez-Prado]'s ability to pay the additional court costs and attorney['s] fees." In addition, although the State agrees that the bill of costs improperly lists the fine as outstanding, it asserts that any complaint regarding the fine "is moot" because the judgment does not include the fine and because "the judgment is the enforceable record."

Regarding the $2,000 fine, that fine was not listed in the district court's judgment adjudicating Hernandez-Prado's guilt or orally pronounced when the district court revoked his community supervision and adjudicated his guilt. Because fines are punitive in nature and are designed to "be part of the convicted defendant's sentence as they are imposed pursuant to Chapter 12 of the Texas Penal Code," they "generally must be orally pronounced in the defendant's presence." *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011); *see* Tex. Code Crim. Proc.

21

art. 42.03, § 1(a) (requiring, with few exceptions, that "sentence shall be pronounced in the defendant's presence"). Moreover, "when guilt is adjudicated, the order adjudicating guilt sets aside the order deferring adjudication, including the previously imposed fine." *Taylor v. State*, 131 S.W.3d 497, 502 (Tex. Crim. App. 2004).

Although we believe that the State is correct that the fine is not enforceable because it was not imposed when the district court orally pronounced its judgment and because it was not included in the judgment adjudicating Hernandez-Prado's guilt, in the interests of justice and in an abundance of caution, we sustain this portion of his last issue. *Cf. Hunter v. State*, No. 12-15-00268-CR, 2016 WL 1599917, at *2, *4 (Tex. App.—Tyler Apr. 20, 2016, no pet. h.) (mem. op., not designated for publication) (modifying bill of costs to remove award of attorney's fees).

Turning to the assessment of court-appointed attorney's fees, as set out above, Hernandez-Prado and the State both agree that it was improper for the district court to impose additional court-appointed attorney's fees that exceeded those imposed when his adjudication was deferred because he was deemed to be indigent during the plea proceeding and during the adjudication of his guilt and because nothing in the record established that there had been a material change in his financial circumstances. The procedure for requiring an indigent defendant to pay attorney's fees is outlined in article 26.05(g) of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 26.05(g). Under that provision, "[i]f the judge determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided . . . , including any expenses and costs, the judge shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that the judge finds the

22

defendant is able to pay." *Id.* Moreover, under the Code, "[a] defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." *See id.* art. 26.04(p).

In this case, before the proceeding in which Hernandez-Prado's adjudication was deferred, the district court determined that Hernandez-Prado "is not fully financially able to employ an attorney" and granted Hernandez-Prado's request for the appointment of counsel but also required him to pay some of his attorney's fees.[7] However, as acknowledged by Hernandez-Prado, regardless of whether the record supported the district court's decision to impose the attorney's fees in that proceeding, he waived any right to appeal the imposition of the attorney's fees as part of his adjudication being deferred because he did not challenge the issue. *See Wiley*, 410 S.W.3d at 317, 321. Before the adjudication proceeding, the district court determined that Hernandez-Prado was indigent, did not "have sufficient net assets to use in hiring a lawyer," and approved his request for appointed counsel. Moreover, nothing in the record indicates that Hernandez-Prado's financial status changed, and Hernandez-Prado's attorney stated during the hearing that he was appointed counsel. Accordingly, the record does not support the imposition of court-appointed attorney's fees during the adjudication proceeding. *See Mayer v. State*, 309 S.W.3d 552, 553, 557 (Tex. Crim. App. 2010) (affirming appellate court's determination that trial court erred by ordering defendant to pay court-appointed attorney's fees when defendant had been declared indigent and when there was no evidence demonstrating defendant's financial resources to offset costs of legal services); *Armstrong*

---

[7] In its order approving Hernandez-Prado's request, the district court found that Hernandez-Prado "is able to pay $500.00 toward attorney's fees" and required Hernandez-Prado to pay $35 out of each paycheck that he received.

*v. State*, No. 07-09-00091-CR, 2011 WL 3629191, at *1 (Tex. App.—Amarillo Aug. 17, 2011, no pet.) (mem. op., not designated for publication) (modifying judgment of trial court to delete obligation that defendant pay costs of his court-appointed attorney because record showed that appellant was indigent when initially charged and remained indigent and because record did not support repayment when nothing showed there was change in ability to pay).

In light of the preceding, we sustain this portion of Hernandez-Prado's final issue on appeal.[8] *See Hunter*, 2016 WL 1599917, at *2, *4.

Although the desired relief and scope of the last set of arguments in Hernandez-Prado's final issue on appeal are not entirely clear, he seems to suggest that the $50 in court costs orally imposed by the district court when it pronounced its judgment and the additional costs listed in the bill of costs other than the fine and attorney's fees (e.g., clerk's fee, sheriff's fee, and records-management-and-preservation fee) should be deleted due to his inability to pay the costs. As discussed above, courts have held that, based on the governing statutory provisions, it is improper to impose court-appointed attorney's fees on a defendant who has been shown to be indigent, but the law is less clear regarding whether an indigent defendant may be ordered to pay court costs. However, several of our sister courts of appeals have determined that a defendant's ability to pay has no bearing on the ability of a trial court to impose legislatively mandated court costs. *See Allen v. State*, 426 S.W.3d 253, 258-59 (Tex. App.—Texarkana 2013, no pet.); *Owen v. State*, 352 S.W.3d 542, 546 (Tex. App.—Amarillo 2011, no pet.); *Williams v. State*, 332 S.W.3d 694, 700 (Tex.

---

[8] The bill of costs shows that Hernandez-Prado owes only $350 in court-appointed attorney's fees, and as discussed above, those fees were imposed during the proceeding in which his adjudication was originally deferred.

App.—Amarillo 2011, pet. denied). In fact, one of our sister courts of appeals explained that "the more persuasive authority indicates that a trial court can order an indigent defendant to pay court costs provided payment is not demanded before the trial court proceedings have concluded" because that would effectively prevent appellate review. *See Allen*, 426 S.W.3d at 258, 259; *see also id.* at 258 (discussing how although due process may prohibit State from denying access to courts based on person's inability to pay, that does not mean that court costs cannot be recovered). Moreover, when confronted with appellate issues regarding the propriety of the imposition of court costs and attorney's fees on indigent defendants, several courts of appeals, including this one, have sustained those issues as they pertained to attorney's fees but upheld the court costs. *See Rodriguez v. State*, No. 06-12-00167-CR, 2013 WL 375408, at *1 (Tex. App.—Texarkana Jan. 31, 2013, no pet.) (mem. op., not designated for publication) (removing improperly imposed attorney's fees but leaving court costs); *Bell v. State*, No. 09-11-00462-CR, 2012 WL 252499, at *1 (Tex. App.—Beaumont Jan. 25, 2012, no pet.) (mem. op., not designated for publication) (subtracting attorney's fees but retaining administrative costs and fees); *Ludlow v. State*, No. 03-11-00212-CR, 2012 WL 104469, at *1 (Tex. App.—Austin Jan. 11, 2012, no pet.) (mem. op., not designated for publication) (deleting attorney's fees but keeping remainder of court costs). We agree with those cases standing for the proposition that an indigent defendant can be assessed court costs. In the absence of an additional challenge asserting that there was no legal basis for imposing the court costs, we overrule this portion of Hernandez-Prado's last issue on appeal. *See Johnson v. State*, 423 S.W.3d 385, 390 (Tex. Crim. App. 2014) (explaining that if defendant challenges court costs, appellate courts determine whether there is legal basis for costs but do not determine if sufficient evidence was presented during trial to support each cost).

In summary, we sustain the portions of Hernandez-Prado's last issue pertaining to the fine and to the court-appointed attorney's fees but overrule the portion of his issue pertaining to court costs.

## CONCLUSION

Having sustained portions of Hernandez-Prado's fourth issue on appeal, we modify the district court's judgment of adjudication to delete the imposition of $600 in court-appointed attorney's fees incurred during the proceeding adjudicating his guilt and modify the bill of costs to delete the $2,000 fine. Having modified the district court's judgment and the bill of costs and having overruled the remainder of Hernandez-Prado's fourth issue as well as his first three issues on appeal, we affirm the district court's judgment adjudicating Hernandez-Prado's guilt as modified.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Modified and, as Modified, Affirmed

Filed:   May 26, 2016

Do Not Publish

26