In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-21-00064-CR**

**DESMOND LEWAYNE MILES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-03-03069-CR**

## MEMORANDUM OPINION

Appellant Desmond Lewayne Miles was indicted for aggravated robbery. *See* Tex. Penal Code Ann. § 29.03(a)(2). Miles waived his right to a jury trial, and after a bench trial, the trial court found Miles guilty of aggravated robbery, assessed punishment at seven years of confinement, and entered a deadly weapon finding. Raising two claims of ineffective assistance of counsel, Miles appeals. We affirm the trial court's judgment.

1

Evidence at Trial

Justine[1] testified that in 2016, she was at home where she lived with her adult brother Evan, her two school-aged children, and her young niece, and she heard someone "banging on the door really hard." Justine and the children were in the living room and Evan was in his bedroom sleeping. According to Justine, she looked out the window and saw a stranger, screaming for her to let him in the house, and he told her that if she did not let him in, he would break the window. She was shocked and scared and told him she would not let him in. The man, later identified as Miles, kicked the window in, and she unsuccessfully tried to block him from entering. Justine testified that Miles looked confused and like "somebody was after him[,]" and he kept saying, "I'm sorry." The children were screaming and praying, and Justine was telling him to get out, but he refused. Miles asked for a cup of water, and Justine sent her daughter to get him water because Justine did not want Miles to get upset.

Justine testified that Evan came out of his bedroom and was telling him to leave, and Justine was trying to get the children to call the police. While Evan stayed with Miles, Justine got the children and barricaded herself and the children in her

---

[1] We refer to the victims by pseudonyms to conceal their identities. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

bedroom. Justine testified that she did not realize that her cell phone was connected to Bluetooth and that was why her children's calls to 911 were not going through and why the first time they were not able to speak with the 911 dispatcher.

A recording of a 911 call made from Justine's cell phone that day was admitted into evidence and played at trial. Justine testified that from the recording it was "[v]ery chaotic[,]" and she could hear her brother saying "[g]et out[,]" her daughter telling her the call was not going through, and her children praying. According to Justine, Miles started pushing against the bedroom door, she screamed, "You are not getting in here[,]" and he told her, "Do not call the police." Miles was able to push the door open a little as they were pushing against the furniture barricade, and Justine saw a part of a kitchen knife with a sharp point and like the kind used to cut meat come through the opening of the door and then go out. Justine testified that she heard Miles leave and she stayed where she was and called the police a second time.

Justine testified that the next day she found her kitchen knife outside by the trampoline. According to Justine, she did not think to call the police to tell them she found the knife because she was shaken up over the incident and was only thinking about keeping her children safe and not thinking about the case against the intruder. Justine testified that Miles must have cut himself when he came in the window because he left blood around the house.

Evan testified that he was awakened by the noise and came into the living area where he saw Justine and the children screaming and asking an intruder (later identified as Miles) to leave them alone. Evan testified that Miles seemed distressed, like he was running away from someone. He tried unsuccessfully to push Miles out of the house and Justine took the children into her bedroom. According to Evan, Miles was pacing around trying to look out the window to see if anyone was approaching, and he tried to see if Justine was calling 911. According to Evan, Miles grabbed a knife and said, "This is a robbery." Evan asked Miles what he wanted, and Miles asked for car keys. Before Evan had time to locate the keys, Miles found Evan's car keys somewhere in the kitchen or living area. Miles then left in Evan's car. Evan testified his car was recovered that day or the next day from DeMontrond RV, which is located less than a mile from his house. The vehicle had no damage, and no items were missing from inside the vehicle. According to Evan, Miles did not try to take any money from the home, and pictures of his recovered car showed that items such as suits, sunglasses, and bank statements with private information were still in the vehicle and unharmed.

Blood samples from inside the house were submitted for DNA testing. After years of no leads in the case, in 2019, law enforcement obtained a "hit" for the blood samples from the house through the CODIS system that matches potential DNA to unknown suspects. Based on that "hit," law enforcement prepared a search warrant

for a DNA sample from Miles, who was incarcerated at the time for a different offense. A buccal swab from Miles was compared with the DNA from the blood samples from the house. A forensic scientist testified that "[o]btaining this profile is 50.9 septillion times more likely if the DNA came from suspect Miles than if the DNA came from an unrelated, unknown individual[,]" and Miles could not be excluded as a possible contributor of the DNA profile.

Miles testified that he was sober on the day he entered Justine and Evan's home. According to Miles, that morning he was meeting a friend at a nearby park and his friend did not show up. He testified that while walking away from the park he felt like someone was watching or following him, and when he turned around, he saw two males, one in all black clothing and the other in "camo gear" in the nearby woods trying to get closer to him like they were trying to apprehend him. Miles testified that he has been through traumatizing experiences like being stabbed, and those events affected his perception and made him anxious but not paranoid. He testified that he started running to keep the two men from capturing him. According to Miles, he saw a lady sitting on her porch and he "needed her to call the police" for him but she did not have a cell phone or landline. He continued running and went to another house to get help and to get someone to call the police for him.

Miles testified he "bang[ed] really hard to get somebody to come to the door" at a house, and when he saw Justine come to the door, he asked her to call the police.

When he realized she was not going to let him in, he kicked his way through the window to get in and cut himself in the process and was bleeding. Miles testified that, once in the house, he told Justine, "Call the police. There are some bad guys after me[]" and "I'm not going to hurt you." Part of the first 911 call was replayed, and Miles agreed that he could be heard saying, "I'm not going to hurt you[,]" "Call the police[,]" and "You going to call the police?" but that it was hard to hear. Miles admitted that it was possible that when Justine and Evan heard this, they thought Miles was taunting them. Miles denied telling Evan that "[t]his is a robbery[,]" but testified that it was his voice on the 911 recording, but according to Miles he told Evan, "This isn't a robbery." Miles testified that it was a chaotic scene, he was not wanted in the house, and Evan was yelling at him to get out of the house. Miles testified that he did not ask for money or phones and only asked for water because he was hot from running. Miles testified that Evan had refused to get Miles to safety and, because Justine was not calling the police, he asked Evan for his car keys. Miles testified he did not remember how he got the keys but that Evan had agreed to "let [Miles] use the car." Miles testified that on his way out, he took the knife for protection from people he was running from and left with it, and he knew Justine was lying when she said she found the knife two days later in the yard because he took the knife in the car with him but did not know what happened to it. Miles explained that he was not trying to steal the car, he left the car at DeMontrond RV

6

parking lot in broad daylight because it did not have much gas in it, there were people still working there when he left the car, and he did not take anything from the car or damage it. Miles admitted that he did not approach one of the DeMontrond RV employees to call the police because he "was already away" and "[i]t was no longer a life or death situation." Miles also admitted that he told one of the employees that the car ran out of gas and that he would come back for it, but he did not tell them what had happened or that the car was not his. He testified that he did not know what he did with the car keys when he abandoned the car, and he agreed that the police report stated that there were no keys left in the car.

According to Miles, he never physically touched anyone in the house, his intention was not to hurt anyone but only to get help, and that his intention was not to deprive Evan of his car but to get away from the perpetrators chasing him because he feared for his life. Miles agreed that he "see[s] things that [he] believe[s] other people don't always see[,]" and that although he understood it might be hard for some to believe, he believed two people were chasing him that day. Miles refused to provide the name of the person whom he was supposed to meet that day because, even though he knew this was a first-degree case, the identity of the person he was supposed to meet was "irrelevant to this case." Miles said he was not going to buy drugs from the person and Miles did not have any drugs, but that he was "going to hang out to have a good time" and he did not "want to go into particulars."

7

Analysis

In two issues, Appellant contends that he was denied his right to effective assistance of counsel. Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.051. This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). With respect to an ineffective assistance claim, our review of counsel's performance is highly deferential, and we make a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *Strickland*, 446 U.S. at 689; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). To overcome that presumption, Appellant must satisfy the two prongs established by *Strickland v. Washington* by demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see also Hernandez v. State*, 726 S.W.2d 53, 55-57 (Tex. Crim. App. 1986) (adopting and applying the *Strickland* test). "Unless [an] appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466

U.S. at 687). The record must contain evidence of counsel's reasoning, or lack thereof, to rebut that presumption. *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

"An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991)). Allegations of ineffectiveness must be shown in the record, and the record must affirmatively establish the alleged ineffectiveness. *See id.* Ordinarily, on direct appeal, the record will not have been sufficiently developed during the trial regarding trial counsel's alleged errors to demonstrate in the appeal that trial counsel provided ineffective assistance under the *Strickland* standards. *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012); *Lopez*, 343 S.W.3d at 143.

"To show prejudice, 'the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (quoting *Strickland*, 466 U.S. at 694).

<u>Counsel's Alleged Failure to Request or Argue for Lesser Included Offense</u>

In his first issue, Miles argues he received ineffective assistance of counsel because his attorney did not file a motion for the consideration of the lesser included offense of unauthorized use of a motor vehicle[2] and "failed to make any argument suggesting that the [trial court] could make such a finding." According to Miles, "[t]here was ample evidence to support a conviction on that lesser charge" and he was prejudiced because "such a finding would have resulted in a state jail conviction rather than a second degree finding."

---

[2] In his appellate brief, although the first issue almost entirely discusses the lesser included offense of unauthorized use of a motor vehicle, on one occasion he refers to the lesser included offense of burglary of a habitation. His brief does not present any arguments related to burglary of a habitation as a lesser included offense and, therefore, his complaint regarding an alleged lesser included offense of burglary of a habitation is inadequately briefed. *See* Tex. R. App. P. 38.1(i). We limit our analysis of his first issue to that of the lesser included offense of unauthorized use of a motor vehicle. We need not determine whether burglary of a habitation is a lesser included offense of aggravated robbery, as pleaded in the indictment. *Compare* Tex. Penal Code Ann. § 29.03 *with* Tex. Penal Code Ann. § 30.02.

To be entitled to a lesser included offense instruction, an appellant must establish two elements: (1) the lesser included offense is included within the proof necessary to establish the charged offense; and (2) there is evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty of only the lesser included offense. *See Wortham v. State*, 412 S.W.3d 552, 554-58 (Tex. Crim. App. 2013); *Ramirez v. State*, 422 S.W.3d 898, 900 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The evidence of the lesser included offense must consist of affirmative evidence that both raises the lesser included offense and rebuts or negates an element of the greater offense. *Wortham*, 412 S.W.3d at 558. We note that "the rule in this state is that 'in a bench trial, the prosecution is not required to submit a lesser included offense charge to the trial judge. The trial court is authorized to find the appellant guilty of any lesser offense for which the State provides the required proof.'" *Leach v. State*, 35 S.W.3d 232, 237 (Tex. App.—Austin 2000, no pet.) (quoting *Shute v. State*, 877 S.W.2d 314, 315 (Tex. Crim. App. 1994)). This is true even if consideration of the lesser included offense is not requested by either party. *See id.*; *see also Martinez v. State*, 449 S.W.3d 193, 206-07 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Thus, despite a trial counsel's failure to argue for a lesser included offense, in a bench trial a trial court could have considered it if the evidence supported it. *See Leach*, 35 S.W.3d at 237; *see also Martinez*, 449 S.W.3d at 206-07.

Miles is correct that unauthorized use of a motor vehicle may be considered a lesser included offense of aggravated robbery. *See Teague v. State*, 789 S.W.2d 380, 382 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). We note that during both defense counsel's arguments for directed verdict and in closing, she argued that he should not be found guilty of aggravated robbery and she conceded at most he only committed the lesser offense of unauthorized use of a motor vehicle.

On appeal, Miles fails to identify affirmative evidence that both raises the lesser included offense and rebuts or negates an element of the greater offense. *See Wortham*, 412 S.W.3d at 558. Further, even assuming the lesser included offense was raised under the evidence, it nonetheless may have been a reasonable trial strategy for trial counsel to have decided not to request the trial court to consider a lesser included offense and elect instead to pursue an "all or nothing" strategy. *See Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004) (determining counsel not ineffective because all-or-nothing approach was strategy decision). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771; *see also Lopez*, 343 S.W.3d at 143; *Ortiz*, 93 S.W.3d at 88-89. Because Miles has not overcome the strong presumption that trial counsel's actions fell within the wide range of reasonable professional assistance, he has not met the first prong under *Strickland*. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 143-44. Because

Miles failed to meet his burden under the first prong of *Strickland*, we cannot conclude that counsel rendered ineffective assistance. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 144. Issue one is overruled.

<u>Counsel's Alleged Failure to Investigate and Litigate Mental Illness</u>

In his second issue, Miles argues he received ineffective assistance of counsel because his attorney failed to properly investigate and examine Miles on his mental illness and failed to argue his mental health condition as mitigating evidence. According to Miles, his testimony suggested that he may be paranoid, that he hallucinates, and that he had been evaluated for mental illness. Miles contends the evidence "clearly raises an issue of mental health which at a minimum should have been developed further through his testimony" and counsel's failure to "use a mental health argument during mitigation" resulted in the trial court rendering an "inherently flawed" punishment. [3]

Under certain circumstance, counsel's failure to conduct an adequate investigation may constitute ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 521-52 (2003). The Supreme Court said in *Strickland,* "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. A claim for ineffective

---

[3] Miles testified that he was evaluated in this case, and pretrial documents Miles signed and filed in the clerk's record state he was competent to stand trial. We note that Miles testified he does not hallucinate, and he is not paranoid.

13

assistance based on trial counsel's failure to investigate the facts of the case generally fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case. *Stokes v. State*, 298 S.W.3d 428, 432, 434 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007)).

Miles had the burden to prove what mitigating evidence would have been discovered and to show how that evidence would have changed the outcome of the proceeding. *See Moore v. State*, 584 S.W.3d 524, 536 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citing *Stokes*, 298 S.W.3d at 432). In his multiple motions for new trial and on appeal, Miles failed to demonstrate what mitigating evidence would have been discovered. *See id.* Furthermore, even if Miles had met his burden to show that his counsel's failure to further investigate and litigate Miles's mental condition was deficient, he also failed to show how the mitigating evidence would have changed the outcome of the proceeding. *See id.*; *see also Jackson*, 877 S.W.2d at 771 (quoting *Strickland*, 466 U.S. at 694). Issue two is overruled. Having overruled Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

14

Submitted on March 24, 2022
Opinion Delivered May 25, 2022
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.